THE STATE EX REL. WHITE ET AL. *v.* FRANKLIN
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. White v. Franklin Cty.
Bd. of Elections* (1992), 65 Ohio St.3d 5.]

(No. 92–1078—Submitted and decided August 28,
1992—Opinion released September 4, 1992.)

6

*Donald J. McTigue,* for relators.

*Michael Miller,* Prosecuting Attorney, and *Harland H. Hale,* for respondents.

*Per Curiam.* The dispositive issue in this case is whether respondents have a clear duty to count all ballots cast for a candidate who has filed an untimely statement of withdrawal of his candidacy. Relators argue that the election

laws require boards of elections to declare election results and make no exception for untimely withdrawals. We agree and, therefore, issue the requested writ of mandamus.

Boards of elections must place qualified candidates on the primary ballot, R.C. 3513.13; count all ballots cast for such candidates, R.C. 3509.06(C) (absentee) and 3513.21 (polls); and certify the results, R.C. 3513.22. The election laws also specify circumstances that excuse performance of the duties to determine and certify election results. See, *e.g.*, R.C. 3513.19 and 3513.20 (voter lacks elector qualifications, political party affiliation, or was bribed), 3505.28 (ballot was marked contrary to law or is impossible to read), 3509.07 (absentee ballot has insufficient accompanying statement or an irregular signature, and absentee voter lacks elector qualifications or envelope includes more than one ballot), and 3513.17 (candidate dies). Relators observe that no such exception is made for a candidate's withdrawal after the sixty-five-day period described in R.C. 3513.30 and, therefore, contend that respondents are in default of their statutory duties.

Respondents reply that allowing Testa's withdrawal serves the public policy favoring free, competitive elections, citing *State ex rel. Giuliani v. Cuyahoga Cty. Bd. of Elections* (1984), 14 Ohio St.3d 8, 14 OBR 314, 471 N.E.2d 148; *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 18 O.O.3d 128, 412 N.E.2d 393; and *State ex rel. Flex v. Gwin* (1969), 20 Ohio St.2d 29, 49 O.O.2d 185, 252 N.E.2d 289. These cases stand for the policy respondents assert, but they do not apply in this case.

In *Giuliani, Smart,* and *Gwin,* we employed the policy favoring free and competitive elections to construe ambiguous election statutes and preserve candidates' placement on the ballot. The statutes at issue here, however, are not ambiguous. Where duties are unambiguously imposed by the election laws, we cannot use public policy to circumvent them.

Moreover, we are bound by precedent, and we recognized the duty to determine and declare election results, absent some overriding exception, in *State ex rel. Ashbrook v. Brown* (1988), 39 Ohio St.3d 115, 529 N.E.2d 896. There, we issued a writ of mandamus directing the board of elections to count absentee ballots cast for a primary candidate who died on the day of the election. We stopped short of ordering that all the deceased candidate's votes be counted only because this was specifically prohibited by R.C. 3513.17.

*Ashbrook* also defeats respondents' best argument for denying the relief in this case—that Testa cannot logically be declared the Republican nominee for

county recorder. *Ashbrook* establishes that candidacies retain vitality, at least for some purposes, notwithstanding a candidate's untimely withdrawal. *Ashbrook* facilitated appointment of a new nominee pursuant to the replacement procedure in R.C. 3513.31. See, also, *State ex rel. Fitzsimmons v. Taylor* (1896), 55 Ohio St. 385, 45 N.E. 715.

Respondents further argue that they had a duty to comply with the Secretary of State's order to accept Testa's withdrawal, and with the Secretary's Directive No. 92–14, which provides:

"A candidate may withdraw his/her name from the primary election ballot after the withdrawal date specified in O.R.C. 3513.30, as long as the ballots have not been printed. Any withdrawal past the time the ballots have been printed should be accepted and votes for the withdrawn candidate should not be counted. The purpose of the withdrawal statute is to allow sufficient time to remove a candidate's name from the ballot. The statute is therefore directive in nature and not mandatory."

R.C. 3501.11(P) requires boards of elections to "[p]erform such other duties as are prescribed by law or the rules of the secretary of state." In *State ex rel. Sagebiel v. Montgomery Cty. Bd. of Elections* (1944), 144 Ohio St. 162, 166, 29 O.O. 259, 261, 57 N.E.2d 661, 663, however, a former version of this statute was held to require compliance only with "lawful orders finding their support in some section or sections of the General Code." Here, respondents cite no statute that permits the Secretary of State to override the duty to count ballots cast in an election and to certify the results.

Finally, respondents claim that the issue raised in this case is identical to the issue in *State ex rel. Henderson v. Lake Cty. Bd. of Elections* (1992), 64 Ohio St.3d 1411, 593 N.E.2d 2, which was dismissed *sua sponte*, refiled as case No. 92–1279, and dismissed again *sua sponte* in 64 Ohio St.3d 1426, 594 N.E.2d 968. Respondents submit that *stare decisis* requires the same result here. *Henderson*, however, is distinguishable because it was filed and refiled after the 1992 primary election.

The decision of a board of elections is final, *State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 175, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880, as is the decision of the Secretary of State in a tie-breaking vote, R.C. 3501.11. These decisions are subject to judicial review, however, for fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal provisions. *State ex rel. Clinard v. Greene Cty. Bd. of Elections* (1990), 51 Ohio St.3d 87, 88, 554 N.E.2d 895, 896. Relators have established that respondents have not complied with their statutory duties to

determine and certify election results. Accordingly, a writ of mandamus is granted, and respondents are ordered to count all ballots cast for the Republican nominee for Franklin County Recorder in the June 2, 1992 primary election, and to certify those results in accordance with the Ohio election laws.

*Writ granted.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., concurs separately.

DOUGLAS, J., dissents.

ALICE ROBIE RESNICK, J., concurring. I concur in the foregoing opinion and judgment, while adhering to my prior position in this case as released in the entry of August 28, 1992. See 64 Ohio St.3d 1451, 597 N.E.2d 1108.

DOUGLAS, J., dissenting. The four members of the Franklin County Board of Elections, respondents, voted on motions to deny Joseph W. Testa's withdrawal of his candidacy for the Republican nomination for Franklin County Recorder and to count but not certify the votes which had been cast for Testa in the primary election. Their votes resulted in two-to-two ties. The Secretary of State, pursuant to statute, broke the tie by voting to allow the withdrawal of Testa's candidacy. The Secretary of State directed respondents to not officially count or certify the votes cast for Testa in the election.

Relators Dennis White and Leonard Hart initiated this original action seeking a writ of mandamus to compel respondents to count the primary ballots cast for Testa as the Republican nominee for county recorder and to certify the results of the election. I would deny the writ. As the majority does not do so, I respectfully dissent.

R.C. 3501.11 provides, in part, that "[i]n all cases of a tie vote or a disagreement in the board, if no decision can be arrived at, the director or chairman shall submit the matter in controversy to the secretary of state, who shall *summarily* decide the question *and his decision shall be final.*" (Emphasis added.) In compliance with the statutory mandate, the Secretary of State exercised his discretion and decided that Testa should be allowed to withdraw as a candidate for county recorder and that the votes cast for Testa should not be counted or certified. Pursuant to the statute, this decision is final, and respondents were not and are not at liberty to disregard the Secretary of State's decision. A writ of mandamus should not issue to negate this *final* decision of the Secretary of State.

It is well established in our jurisprudence that, absent an abuse of discretion, a writ of mandamus will not issue to compel a public body or official to act in a certain way on a discretionary matter. See, *e.g.*, *State ex rel. Veterans Serv. Office v. Pickaway Cty. Bd. of Commrs.* (1991), 61 Ohio St.3d 461, 463, 575 N.E.2d 206, 207. There is no indication that the Secretary of State abused his discretion in resolving the issues in favor of Testa's withdrawal as a candidate. We should not be substituting our judgment for that of the Secretary of State—especially where the statute says his decision is final.

The majority says, however, that the casting of a tie-breaking vote by the Secretary of State is a decision "subject to judicial review * * * for fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal provisions." In support of this proposition, the majority cites *State ex rel. Clinard v. Greene Cty. Bd. of Elections* (1990), 51 Ohio St.3d 87, 554 N.E.2d 895. *Clinard* is not, however, authority for the majority's statement. *Clinard* is a case involving the finality of decisions of *county boards of elections* and has nothing to do with R.C. 3501.11 and the finality of decisions of the Secretary of State. Thus, it is inaccurate to cite *Clinard* for the proposition for which it is cited.

A similar inaccuracy appears in *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 598 N.E.2d 1149, where the majority cites *State ex rel. Ferguson v. Brown* (1962), 173 Ohio St. 317, 19 O.O.2d 227, 181 N.E.2d 890 (overruled in part in *State ex rel. Saffold v. Timmins* [1970], 22 Ohio St.2d 63, 51 O.O.2d 95, 258 N.E.2d 112), for the proposition that the Secretary of State's decisions which are otherwise final may be reviewed for fraud, corruption, abuse of discretion or a clear disregard of statutes or court determinations. *Ferguson* dealt only with the Secretary of State's final decisions regarding the validity or invalidity of *nominating petitions.* Furthermore, the court in *Ferguson* supported its determination regarding the authority to review a Secretary of State's final decisions by citing *State ex rel. Flynn v. Cuyahoga Cty. Bd. of Elections* (1955), 164 Ohio St. 193, 57 O.O. 402, 129 N.E.2d 623, paragraph one of the syllabus (overruled on other grounds in *State ex rel. Schenck v. Shattuck* [1982], 1 Ohio St.3d 272, 1 OBR 382, 439 N.E.2d 891), which, again, dealt with the finality of a decision by a *county board of elections* and not with a final decision of the Secretary of State.

By issuing a writ directly to the board of elections, the majority ignores R.C. 3501.11, and by bypassing the Secretary of State, the majority treats the Secretary of State and the law as though they do not exist. Whatever magic wand the majority uses for this inexplicable action does not, fortunately, make

the real law disappear and it remains as part of the statute to be properly construed at some future time.

Today, the majority stands the law of mandamus on its head. In the process, the majority has ignored the dictates of R.C. 3501.11 and has substituted its judgment for that of the Secretary of State whose decision is, in a case like the one now before us, final. The majority does all of this by relying on authority which governs county boards of elections—not the Secretary of State.

Because I do not agree with the judgment or the reasoning of the majority, I must respectfully dissent.