THE STATE EX REL. HERMAN *v.* KLOPFLEISCH ET AL.

[Cite as *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581.]

582

(No. 95–365—Submitted May 23, 1995—Decided July 26, 1995.)

*McTigue & Brooks* and *Donald J. McTigue,* for relator.

*Chester, Willcox & Saxbe, Charles R. Saxbe* and *Donald C. Brey,* for respondent Klopfleisch.

*Betty D. Montgomery,* Attorney General, and *Andrew S. Bergman,* Assistant Attorney General, for respondent Secretary of State.

---

*Per Curiam.* Herman instituted this action in quo warranto seeking Klopfleisch's ouster, and Herman's appointment to, the office of Mayor of Celina. We granted an alternative writ and allowed the Secretary of State to intervene as a respondent.

Herman asserts in his first proposition of law that when a person nominated at a primary election and subsequently elected mayor resigns, the vacancy is filled by the central committee of the political party that nominated the person.

"A person claiming to be entitled to a public office unlawfully held and exercised by another may bring an action therefor by himself or an attorney at law, upon giving security for costs." R.C. 2733.06. In order for a writ of quo warranto to issue, relator must establish (1) that the office is being unlawfully held and exercised by respondent, and (2) that relator is entitled to the office. *State ex rel. Brenders v. Hall* (1995), 71 Ohio St.3d 632, 633–634 646 N.E.2d 822, 824; *State ex rel. Delph v. Barr* (1989), 44 Ohio St.3d 77, 541 N.E.2d 59, syllabus.

R.C. 3.02(B) provides:

"When an elective office becomes vacant and is filled by appointment, the appointing authority shall * * * certify it to the board of elections * * *. The board of elections * * * shall issue a certificate of appointment to the appointee. * * *"

When the determination by a board of elections on the appointment results in a tie vote, the matter must be submitted to the Secretary of State, "who shall summarily decide the question and his decision shall be final." R.C. 3501.11(W).

The Secretary of State contends that R.C. 3501.11(W) precludes any judicial review of his decision to issue the certificate of appointment to Klopfleisch, since the Secretary of State's decision is "final." However, although the decision of the Secretary of State is not subject to appeal, it, like a decision of a board of elections, is subject to review in extraordinary actions to determine whether the Secretary of State engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions. *State ex rel. The Limited, Inc. v. Franklin Cty. Bd. of Elections* (1993), 66 Ohio St.3d 524, 526, 613 N.E.2d 634, 635; *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 598 N.E.2d 1149; *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 598 N.E.2d 1152.

In applying the applicable standard of review, there is no claim of fraud or corruption. In addition, relator concedes that the Secretary of State did not abuse his discretion in deciding that Klopfleisch was entitled to the appointment.

Accordingly, the dispositive issue is whether the Secretary of State acted in clear disregard of the pertinent law, *i.e.*, R.C. 733.08.

R.C. 733.08 provides:

"*In case of the* death, *resignation,* or removal *of the mayor, the vacancy in the office of mayor shall be filled for the remainder of the unexpired term by a person chosen by the residents of the city who are members* of the city central committee if there is one, or if not then *of the county central committee, of the political party with which the last occupant of the office was affiliated.* If the vacancy occurs because of the death, resignation, or inability to take office of a mayor-elect, an appointment to take office at the beginning of the term shall be made by the members of the central committee who reside in the city where the vacancy occurs.

" * * *

"If the last occupant of the office of mayor or the mayor-elect was elected as an independent candidate, the vacancy shall be filled by election by the legislative authority for the unexpired term." (Emphasis added.)

Respondents contend that R.C. 733.08 plainly and unambiguously gave the Mercer County Republican Central Committee authority to appoint a person to fill the vacancy for the office of Mayor of Celina because ex-mayor Mustard was "affiliated" with the Republican Party, even though he had been elected as a Democrat. Relator claims that R.C. 733.08 is ambiguous and that we should apply the statutory interpretation rules specified in R.C. 1.49.

In construing a statute, a court's paramount concern is the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486, 488. "In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1323. If the meaning of a statute is unambiguous and definite, then it must be applied as written and no further interpretation is appropriate. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 524–525, 634 N.E.2d 611, 614.

R.C. 733.08 allows city residents who are members of the county central committee "of the political party with which the last occupant of the office was affiliated" to fill a vacancy where the mayor dies, resigns, or is removed and there is no city central committee. At issue in this case is with what party ex-mayor Mustard was "affiliated." Words used in a statute must be taken in their usual, normal or customary meaning. *State ex rel. Solomon, supra*; see, also, R.C. 1.42. The word "affiliated" signifies a condition of being in close connection, allied, or associated as a member. See Black's Law Dictionary (6 Ed.1990) 58, defining

"affiliate." Although Klopfleisch relies on R.C. 3513.19(A)(3) and 3513.05 to assert that "affiliated" *unambiguously* refers to the party primary election in which Mustard voted in the two years preceding his resignation, neither of these statutory definitions is made expressly applicable to R.C. 733.08 by direct statutory provision. Thus, "affiliated" as used in R.C. 733.08 has not "acquired a technical or particular meaning * * * by legislative definition or otherwise * * *." R.C. 1.42.

Applying the usual, normal and customary meaning of "affiliated," it is evident that R.C. 733.08 is ambiguous, in that it is unclear whether it refers to the party which the ex-mayor was affiliated with at the time he was elected or at the time he left office, and if it is the latter, what test to apply to determine party affiliation. Since R.C. 733.08 is ambiguous in this regard, the court may resort to the general rules of statutory interpretation to resolve the ambiguity.

The *in pari materia* rule of construction may be used in interpreting statutes where some doubt or ambiguity exists. *State Farm Mut. Auto. Ins. Co. v. Webb* (1990), 54 Ohio St.3d 61, 63–64, 562 N.E.2d 132, 134; *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 27–28, 512 N.E.2d 332, 335. All statutes relating to the same general subject matter must be read *in pari materia*, and in construing these statutes *in pari materia*, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes. *United Tel. Co. v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1131. Herman agrees that R.C. 733.08 should be read *in pari materia* with Ohio's election statutes.

R.C. 3513.19(A)(3) and 3513.05 relate to the same general subject matter as R.C. 733.08, *i.e.*, "affiliation," for purposes of election-type issues. R.C. 3513.19 provides:

"(A) It is the duty of any witness or challenger and of any judge or clerk of elections and the right of any elector, whenever he doubts that a person attempting to vote at a primary election is legally entitled to vote at such election, to challenge the right of such person to vote. The right of a person to vote at a primary election may be challenged upon the following grounds:

" * * *

"(3) That he is not affiliated with or is not a member of the political party whose ballot he desires to vote. Such party affiliation shall be determined by examining the elector's voting record for the current year and the next two preceding calendar years as shown on the voter's registration card, using the standards of affiliation specified in division (D) of section 3513.05 of the Revised Code."

R.C. 3513.05 provides that "[f]or purposes of signing or circulating a petition of candidacy for party nomination or election, an elector is considered to be a member of a political party if he voted in that party's primary election within the preceding two calendar years, or if he did not vote in any other party's primary election within the preceding two calendar years."

In construing R.C. 733.08 *in pari materia* with R.C. 3513.19(A)(3) and 3513.05, an examination of Mustard's voting record for the two years preceding his 1994 resignation letter reveals that he voted in the Republican primaries in 1992 and 1994 without voting in any Democratic primary election in that same period. Accordingly, the Secretary of State did not act in clear disregard of R.C. 733.08 in deciding that Klopfleisch, the selection of the Mercer County Republican Central Committee, was entitled to the mayoral appointment.

Herman contends that the first sentence of R.C. 733.08 should be construed consistently with its last sentence, which provides that "[i]f the last occupant of the office of mayor or the mayor-elect was *elected as* an independent candidate, the vacancy shall be filled by election of the legislative authority for the unexpired term." (Emphasis added.) However, this would require the court to construe "affiliated" to be the same as "elected as." It is the duty of the court to give effect to the words used and not to insert words not used. *State ex rel. Carter v. Wilkinson* (1994), 70 Ohio St.3d 65, 66, 637 N.E.2d 1, 2. The General Assembly presumably intended different results for the two situations when it used "affiliated" in one portion of R.C. 733.08 and "elected as" in another. Herman's contention is thus without merit.

Similarly, Herman contends that the determination of what constitutes "affiliated" should not be relegated to a "case-by-case" analysis dependent upon differing circumstances relating to a mayor's affiliation following election. Nevertheless, when an election statute is subject to two different, but equally reasonable, interpretations, the interpretation of the Secretary of State, the state's chief election officer, is entitled to more weight. *State ex rel. Barth v. Hamilton Cty. Bd. of Elections* (1992), 65 Ohio St.3d 219, 225, 602 N.E.2d 1130, 1135. The Secretary of State's determination that the resolution of the "affiliated" issue generally requires a consideration of all relevant circumstances is not an unreasonable interpretation of R.C. 733.08, which can be considered a quasi-election statute.

Consequently, in addition to R.C. 3513.19(A)(3) and 3513.05, there was evidence that Mustard was publicly announced to be a Republican shortly after taking office, actively engaged in Republican Party activities after May 1992, and sent a copy of his resignation letter to the chairman of the Mercer County Republican Party. Although Herman claims that the Secretary of State's framework for analyzing this issue "leads to unreasonable and absurd results," the hypothetical

examples posited by relator are merely indicative of cases that might prove a closer call than this one. Any abuse of discretion or clear disregard of applicable legal provisions by the Secretary of State may still be challenged by extraordinary writ. As noted previously, the Secretary of State did not clearly disregard R.C. 733.08 in deciding that Klopfleisch was entitled to the appointment. Therefore, Herman's first proposition of law is overruled.

Herman asserts in his second proposition of law that R.C. 733.08, as construed and applied by respondents, is unconstitutional "under First Amendment and equal protection standards" because it fails to preserve the will of the voters who elected Mayor Mustard when he ran as a Democrat. Statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision. *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 33.

Herman relies on *Rodriguez v. Popular Democratic Party* (1982), 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628, to claim that R.C. 733.08, as interpreted and applied by respondents, is unconstitutional. However, as respondents note, the Supreme Court of the United States in *Rodriguez, supra*, 457 U.S. at 8, 102 S.Ct. at 2199, 72 L.Ed.2d at 634–635, emphasized that "[n]o provision of the Federal Constitution expressly mandates the procedures that a state * * * must follow in filling vacancies in its own legislature." Similarly, analogous Ohio statutes have been upheld as constitutional. See, *e.g., State ex rel. Bible v. Hamilton Cty. Bd. of Elections* (1970), 22 Ohio St.2d 57, 51 O.O.2d 92, 258 N.E.2d 227 (former version of R.C. 3513.191); *Lippitt v. Cipollone* (N.D.Ohio 1971), 337 F.Supp. 1405 (former versions of R.C. 3513.05, 3513.19, and 3513.191). Therefore, R.C. 733.08, as construed and applied by the Secretary of State, is constitutional, and Herman's second proposition of law is overruled.

Accordingly, since Herman failed to establish that Klopfleisch is unlawfully holding and exercising the office of Mayor of Celina, and that Herman is entitled to that office, the writ of quo warranto is denied.

*Writ denied.*

MOYER, C.J., WRIGHT, F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS, RESNICK and PFEIFER, JJ., concur separately.

DOUGLAS, J., concurring. This cause originated in this court on the filing, by relator, Henry Paul Herman, of a complaint for a writ of *quo warranto*. A majority of this court (Douglas and Pfeifer, JJ., dissenting) granted an alternative writ to relator and set a briefing schedule. 71 Ohio St.3d 1486, 646 N.E.2d 180. Subsequently, we granted the motion of Bob Taft, Secretary of State of Ohio, to intervene. I now write separately to set forth why I believe that the writ sought by relator should have been summarily denied and the case dismissed.

This case arises out of two tie votes (two-to-two) of the Mercer County Board of Elections. When such an event occurs, R.C. 3501.11 is applicable. R.C. 3501.11 provides in part: "In all cases of a tie vote or a disagreement in the board [of elections], if no decision can be arrived at, the director or chairman shall submit the matter in controversy to the secretary of state, who shall *summarily* decide the question and his decision *shall be final*." (Emphasis added.) This provision could not be more clear and, therefore, in accordance with the statute, the matter was submitted to the Secretary of State for his tie-breaking vote. The Secretary of State did, in compliance with the statute, cast his vote which broke the tie. Now relator seeks to overturn that decision notwithstanding the clear dictates of the statute that the vote of the Secretary of State "shall be final."

In *State ex rel. The Limited, Inc. v. Franklin Cty. Bd. of Elections* (1993), 66 Ohio St.3d 524, 526, 613 N.E.2d 634, 635, we said that " * * * pursuant to R.C. 3501.11, the decision of the Secretary of State (or his designate) is final *and not subject to appeal.* * * * " (Emphasis added.) This was, I believe, an accurate statement of the law and a proper modification of *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 598 N.E.2d 1149; *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 598 N.E.2d 1152; and *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 600 N.E.2d 656. Reasoning to support this position is set forth in my concurrences and dissent in those cases.

Rather than dismissing the cause, the majority proceeds to decide the case. In so doing, the majority properly says:

"In construing a statute, a court's paramount concern is the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486, 488. 'In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished.' *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1323. If the meaning of a statute is unambiguous and definite, then it must be applied as written and no further interpretation is appropriate. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 524–525, 634 N.E.2d 611, 614."

It is at this point that the majority then loses its way. The majority launches into a discussion of the word "affiliated," as used in R.C. 733.08, and finds the word ambiguous, thereby requiring interpretation. Rather than interpreting the word "affiliated" as used in R.C. 733.08, the majority should have been applying the word "final" as set forth by the General Assembly in R.C. 3501.11.

"Final" is defined as "[l]ast; conclusive; decisive; definitive; terminated; completed. As used in reference to legal actions, this word is generally contrasted with 'interlocutory.' For res judicata purposes, a judgment is 'final' if no

further judicial action by court rendering judgment is required to determine matter litigated." Black's Law Dictionary (6 Ed.Rev.1990) 629. If the majority had applied the clear, unambiguous language of R.C. 3501.11, there would have been no need to construe R.C. 733.08. When the Secretary of State ruled, the case was closed. By ignoring the clear dictates of R.C. 3501.11 and, thereby, permitting this case to drag on for an unwarranted period of time, and at obvious substantial expense and consternation to the parties, the majority defeats the intention of the General Assembly to conclude such matters in a timely and inexpensive manner.

In conclusion, the law is clear and this case should have been dismissed. The prosecution of this case by relator should result, I believe, in an application by respondent for attorney fees and other related costs which, upon application, I would be favorably inclined to grant.

RESNICK and PFEIFER, JJ., concur in the foregoing concurring opinion.