DECISION
Relator, Valrie Tucker Gamble, has filed an original action in prohibition and/or quo warranto requesting this court to issue writs to compel respondents, the Franklin County Board of Elections and its members as individuals, to invalidate the petition of James W. Mueller, Jr., for mayor of the village of New Rome, to invalidate his candidacy for the office of mayor and to invalidate any vote cast on behalf of Mueller and the November 6, 2001 election.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including procedural posture and allegations of the complaint and conclusions of law. (Attached as Appendix A.) The magistrate decided that the complaint should sua sponte be dismissed. No objections have been filed to the magistrate's decision.
Upon a review of the magistrate's decision and an independent review of the record, this court finds there is no error of law or other defect on the face of the magistrate's decision and adopts it as its own. Therefore, the complaint is sua sponte dismissed.
Action dismissed.
 IN PROHIBITION AND/OR QUO WARRANTO
On SUA SPONTE DISMISSAL
Relator, Valrie Tucker Gamble, filed this original action in prohibition and/or quo warranto in regard to the candidacy of James W. Mueller, Jr., for election to mayor of the Village of New Rome, Ohio ("New Rome"), asking the court to issue an extraordinary writ compelling respondent Board of Elections ("Board"), and its members as individual respondents, "to invalidate Mr. Mueller's petition for Mayor of the Village of New Rome, to invalidate Mr. Mueller candicacy [sic] for said mayoral post and to invalidate any vote cast on behalf of Mr. Mueller in the November 6, 2001 Village of New Rome election."
The magistrate concludes that the court should dismiss the complaint sua sponte under Civ.R. 12(B), as explained more fully below.
Procedural Posture and Allegations of the Complaint:
1. On October 29, 2001, the present complaint was filed by "Valrie Tucker Gamble," who identified herself as "a dully registered voter in Franklin County [sic]" who has resided in New Rome for more than one year. (In signing her name, however, relator repeatedly signed herself as "Valerie" Tucker Gamble, and it therefore appears that relator's name is misspelled throughout the complaint.)
2. Relator alleges in her complaint that New Rome had eighty-seven residents as of the 2000 Census. She asserts that the Board accepted a statement of candidacy and nominating petition for election to mayor of New Rome from James ("Jamie") William Mueller, Jr., and that the petition presented a total of fifteen signatures of purported residents of New Rome, on two nominating-petition forms.
3. As exhibits to her complaint, relator provides unauthenticated copies of two nominating-petition forms allegedly filed with the Board on August 23, 2001, for Mr. Mueller's candidacy for mayor of New Rome.
4. Relator alleges that seven of the fifteen signers of the petitions listed residences outside the boundaries of New Rome and, accordingly, are not qualified electors in New Rome, leaving only eight qualified electors on Mr. Mueller's petitions, "which renders Mr. Mueller's petitions invalid pursuant to Ohio Revised Code Section 3513.251." Relator identifies the names and addresses of the allegedly unqualified electors who signed the petition forms.
5. In addition, relator alleges that Mr. Mueller has not been a resident of New Rome for more than one year and is therefore not qualified to hold the office of mayor pursuant to R.C. 733.24 and New Rome Ordinance No. 050592-1.
6. Relator further alleges that, in the petitions, Mr. Mueller stated his address as "5311 W. Broad Street, New Rome," which is a four-unit apartment building in New Rome, but she alleges that "none of the actual residents of 5311 W. Broad Street know of nor have ever seen Mr. Mueller reside at 5311 W. Broad Street." Accordingly, relator alleges that Mr. Mueller may be in violation of R.C. 3599.36.
7. Attached to the complaint are two affidavits sworn on October 8, 2001. The first affiant states that she resides at 5311 W. Broad Street, Apartment B, and that James W. ("Jamie") Mueller has not lived at her apartment at any time within the last year. The second affiant states that she has resided for nine months at 5311 W. Broad Street, Apartment D, and that Mr. Mueller has not lived at her apartment at any time within the last year. Exhibits C and D.
8. Exhibit E is a document titled "Board Members Franklin County Board of Elections" and signed by relator as "Valerie Tucker Gamble," with a date-stamp indicating it was filed with the Board on October 1, 2001. In this document, relator stated that she was filing "this complaint and protest the nominating petition of James (James) W. Mueller Jr. [sic]." Relator stated the grounds of her protest as follows:
 Protest 1. There are not enough valid names on this petition as 6 don not live inside the Corporation Limit of the Village of New Rome. [sic]
 Protest 2. Mr. Mueller Jr., is not a resident of this village at this time, and has not been for the 1year time period prior to filing this petition. [sic]
9. The complaint includes no allegations regarding the response of the Board to her protest, such as any allegation regarding a hearing or denial of her protest.
10. On November 1, 2001, the complaint was referred to the undersigned magistrate without limitation of powers under Civ.R. 53.
Conclusions of Law:
In this original action, relator seeks an extraordinary writ of prohibition and/or quo warranto. In order to obtain a writ of prohibition, relator must allege and prove (1) that the Board is about to exercise or has exercised judicial or quasi-judicial power, (2) that the exercise of that power is unauthorized by law, and (3) that denial of the writ will cause injury for which no adequate remedy in the ordinary course of law exists. State ex rel. Phillips v. Lorain County Bd. of Elections (Oct. 23, 2001), S.Ct. No. 01-1765, slip opinion. For example, an extraordinary writ will not be issued when relator failed to file a timely protest as provided by the elections statutes. E.g., State ex rel. Lippitt v. Bd. of Elections (1978), 56 Ohio St.2d 70.
Pursuant to R.C. 3513.251, when a municipal corporation has a population of less than two thousand, nominations for officers of the corporation are ordinarily made by nominating petitions. The nominating petition must be signed by not less than ten qualified electors of the municipal corporation. The petition must be filed not later than the seventy-fifth day before the election, and the Board then reviews and verifies the signatures until the number of verified signatures on a petition equals the minimum required number of qualified signatures. Id. Under R.C. 3501.38(A), only electors qualified to vote on the candidacy that is the subject of the nominating petition may sign the petition.
Each nominating petition must contain a declaration, signed by the candidate and made under penalty of election falsification, that he is an elector qualified to vote for the office he seeks. R.C. 3513.261. The penalty for election falsification is imprisonment for not more than six months or a fine of not more than one thousand dollars, or both. Id.; see, also, R.C. 3599.36 (regarding penalties for election falsification and perjury in matters relating to elections).
After the statement of candidacy and nominating petition are filed, they remain open for public inspection until the afternoon of the seventieth day before the general election. The Board, not later than the sixty-eighth day before the election, must examine and determine the sufficiency of the signatures on the petition papers and the validity or invalidity of petitions filed with it. R.C. 3513.263.
However, if a municipal corporation has chosen "home rule" and has a charter that sets forth requirements for candidates and/or petitions for municipal office, the charter's requirements may control. See, e.g., State ex rel. Graham v. Bd. of Elections (1979), 60 Ohio St.2d 123; State ex rel. Haffner v. Green (1953), 160 Ohio St. 189.
Written protests against nominating petitions may be filed by any qualified elector eligible to vote for the candidate whose nominating petition he or she objects to, not later than the sixty-fourth day before the general election. Upon the filing of a protest with the Board, it must promptly hear and determine the validity or invalidity of the petition, with notice to the protester and the candidate. R.C. 3513.263.
Under R.C. 3501.39(A), the Board must accept a nominating petition unless one of the following occurs:
 (A)(1) A written protest against the * * * candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the elections officials * * * that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure.
 (2) A written protest against the * * * candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the elections officials * * * that the petition violates any requirement established by law.
 (3) The candidate's candidacy * * * violates the requirements of this chapter, Chapter 3513 of the Revised Code, or any other requirements established by law. [Emphasis added.]
As set forth at R.C. 3501.39(B), a board of elections may not invalidate a declaration of candidacy or nominating petition under division (A)(3) after the fiftieth day before the election. Conversely, the Board may invalidate a candidacy or petition less than fifty days before the election under divisions (A)(1) or (2).
A writ of prohibition is an appropriate remedy to prevent a board of election from placing the name of a candidate on a ballot, whose name may not be lawfully placed thereon. Graham, supra. A writ of prohibition may issue to prevent the placement of a candidate's name on a ballot even though a protest hearing has been completed as long as the election has not yet been held. State ex rel. Hills Communities, Inc. v. Clermont County Bd. of Elections (2001), 91 Ohio St.3d 465, 467. However, a party seeking to remove a candidate from a ballot must take action with extreme promptness, or the doctrine of laches will bar the action:
 It is well established that in election-related matters, extreme diligence and promptness are required. [citation omitted] If a party seeking extraordinary relief in an election-related matter fails to exercise the requisite diligence, laches may bar the action. [Id. at 467.]
In the present action, the magistrate finds that the request for a writ of prohibition is barred by laches. Moreover, relator has failed to allege sufficient facts to establish that no adequate remedy at law exists, and has failed to allege sufficient facts to establish that the Board has exercised or is about to exercise judicial or quasi-judicial power.
Relator does not allege in the body of her complaint that she sought a remedy under R.C. 3513.263 by filing a protest to Mr. Mueller's candidacy or nominating petition. However, she attached to her complaint a copy of Mr. Mueller's statement of candidacy and nominating petition filed on August 23, 2001, together with a copy of her protest filed on October 1, 2001.
The magistrate treats the statements in these unauthenticated documents as allegations of the complaint. However, accepting the statements as true under Civ.R. 12(B), the magistrate finds that claimant delayed more than five weeks in filing her protest with the Board. She then obtained affidavits in support of her protest on October 8, 2001, but did not file this action for extraordinary relief until October 29, 2001, only days before the election on November 6, 2001. Claimant fails to state when, or whether, the Board heard and decided her protest.
Furthermore, relator has not filed a motion for expedited treatment of her complaint, whereas parties in other election-related cases have acted to ensure an expedited determination. See Hill, supra, at 467, and cases cited therein. Similarly, at the time she filed her complaint, relator filed no request for an alternative writ or peremptory writ. See Maranze v. Montgomery County Bd. of Elections (1958), 167 Ohio St. 323. In the absence of a motion for accelerated scheduling, the case was assigned to the regular calendar. The complaint included a "certificate of service" from relator's counsel stating that he sent the complaint to respondents by regular mail on October 29, 2001, but relator filed no request for service of summons by the clerk, who then mailed respondents the summons and complaint by certified mail. As of November 1, 2001, the record included no documentation of completed service upon any respondent.
The magistrate concludes that, even if the alleged facts are accepted as true, relator has not proceeded with the extreme diligence and promptness required to obtain a writ of prohibition in an election-related matter. Relator did not file her complaint giving adequate time to allow the court to give notice to and receive answers from respondents, admit evidence, set a hearing, or consider any request from Mr. Mueller to intervene, nor did relator request expedited treatment of her complaint.
Second, relator has not alleged facts in her complaint to establish that the Board has exercised quasi-judicial authority in rendering a decision on her protest, nor has she alleged that the Board is about to exercise quasi-judicial authority in ruling on her protest. Even if the court accepts Exhibit E as an allegation that relator filed a protest, relator has nonetheless failed to allege an adverse decision by the Board. Nor does she allege that a hearing was held or is scheduled. Further, relator has not alleged that the Board has failed to hear her protest in a timely manner or has failed to issue a timely decision on her protest, seeking a writ of mandamus to compel the Board to hear and decide her protest. In short, relator has not alleged facts to demonstrate that the Board exercised judicial or quasi-judicial power or is about to do so, and her complaint therefore fails to state a claim on which relief may be granted in prohibition.
Third, relator does not allege that, although she sought a remedy under the ordinary course of law, the proceedings resulted in an adverse decision that was fraudulent, an abuse of discretion, or otherwise unlawful. Given that relator has not alleged that the Board heard and denied her protest — that is, she had not alleged that she attempted to obtain a remedy under the ordinary course of law but was unsuccessful, relator has failed to allege sufficient facts to establish that she had no adequate remedy at law.
Accordingly, based on several distinct grounds, the magistrate concludes that relator has failed to state a claim upon which a writ of prohibition may be granted.
Next, in regard to relator's complaint for a writ of quo warranto, the magistrate observes that, under R.C. 2733.01, an action in quo warranto may be brought against "a person who usurps, intrudes into, or unlawfully holds or exercises a public office." Before a party is entitled to maintain an action in quo warranto, he must show: (1) his own right to the office; (2) that another person is holding the office unlawfully; and (3) that he has no adequate remedy at law. E.g., Parma v. Cleveland (1984), 9 Ohio St.3d 109; State ex rel. Herman v. Klopfleisch (1995),72 Ohio St.3d 581.
In other words, an action in quo warranto must be brought in the name of the state by a person claiming to be entitled to the office. Maranze; Herman, supra. Where no one has yet been appointed or elected to the office and the disputed candidate does not actually hold the office, an action in quo warranto is premature, because an action in quo warranto determines a person's right to hold office, not his right to seek election or appointment to it. See Parma; Herman, supra. See, also, State ex rel Giuliani v. Cuyahoga County Bd. of Elections (1984),14 Ohio St.3d 8, 11 (noting in dissent that, although the court had decided to deny a writ requested prior to the election, that decision would not prevent the filing of an election contest following the election nor the filing of an action in quo warranto by the candidate's opponent, or both, because the denial of the writ before the election determined only whether the name of the candidate would appear on the ballot, not whether he had a lawful right to hold the office).
Further, where the election statutes provide a remedy at law for challenging an election, resort to proceedings in quo warranto is not proper where relator has not attempted to obtain a remedy under the statutes. State ex rel. Shriver v. Hayes (1947), 148 Ohio St. 681, 686. An action in quo warranto is not a substitute for the statutorily provided procedures for contesting an election. State ex rel. Byrd v. Bd. of Elections (1981), 65 Ohio St.2d 40.
In the present action, relator does not allege that Mr. Mueller has been elected or is holding the office of mayor of New Rome. Relator does not allege that she is entitled to hold the office. Relator does not allege that, if Mr. Mueller is elected next week, the election cannot be contested pursuant to the procedures provided in R.C. Title 35. Accordingly, even accepting the allegations of the complaint, the magistrate concludes that relator has not stated a claim upon which relief in quo warranto may be granted.
As relator has not stated a claim on which relief may be granted in prohibition or quo warranto, the magistrate recommends that the court dismiss the complaint sua sponte.