[Cite as *State v. Havens*, 2024-Ohio-2204.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| JAMES R. HAVENS | : | Case No. 23 CA 0089 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 23 TRD 08926


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     June 7, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

BOBBIE YEAGER                         ROBERT E. CALESARIC
40 West Main Street                    35 South Park Place
Suite 404                              Suite 150
Newark, OH  43055                      Newark, OH  43055

*King, J.*

{¶ 1}   Defendant-Appellant, James R. Havens, appeals his November 15, 2023 conviction by the Court of Common Pleas of Licking County, Ohio.  Plaintiff-Appellee is the state of Ohio.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On October 22, 2023, Havens was cited for texting while driving in violation of R.C. 4511.204.  A bench trial commenced on November 15, 2023.  At the conclusion of the trial, the trial court found Havens guilty; no fine was imposed, but he was ordered to pay costs.

{¶ 3}   Havens filed an appeal with the following assignments of error:

I

{¶ 4}   "TRIAL COURT ERRED IN FINDING APPELLANT GUILTY SINCE DEFENDANT WAS NEVER IDENTIFIED AS THE PERSON WHO WAS COMMITTING A VIOLATION OF R.C. 4511.204."

II

{¶ 5}   "TRIAL COURT ERRED IN FINDING APPELLANT GUILTY SINCE THE STATE DID NOT PROVE THE EXCEPTIONS FOR A VIOLATION AS SET OUT IN R.C. 4511.204."

I

{¶ 6}   In his first assignment of error, Havens claims the trial court erred in finding him guilty as he was never identified as the person who was texting while driving.  We disagree.

{¶ 7}   Havens was the defendant in the courtroom.  T. at 2.  Ohio State Highway Patrol Sergeant Jermaine Thaxton testified to observing "the defendant" driving with a cellphone in his hand with his wrist on the steering wheel, manipulating the phone (his fingers were moving).  T. at 4.  Havens testified and stated his name and address that matched the information on the traffic citation in the record.  T. at 11.  He testified to his encounter with Sergeant Thaxton.  T. at 11-13.

{¶ 8}   Upon review, we find Havens was sufficiently identified as the individual who was issued the traffic citation for texting while driving.

{¶ 9}   Assignment of Error I is denied.

II

{¶ 10} In his second assignment of error, Havens claims the trial court erred in finding him guilty because the state did not prove the exceptions under the statute.  We disagree.

{¶ 11} R.C. 4511.204, known as the "texting while driving" statute, states under subsection (A): "No person shall operate a motor vehicle, trackless trolley, or streetcar on any street, highway, or property open to the public for vehicular traffic while using, holding, or physically supporting with any part of the person's body an electronic wireless communications device."  Subsection (B) provides for the following exceptions:

(B) Division (A) of this section does not apply to any of the following:

(1) A person using an electronic wireless communications device to make contact, for emergency purposes, with a law enforcement agency,

hospital or health care provider, fire department, or other similar emergency agency or entity;

(2) A person driving a public safety vehicle while using an electronic wireless communications device in the course of the person's duties;

(3) A person using an electronic wireless communications device when the person's motor vehicle is in a stationary position and is outside a lane of travel, at a traffic control signal that is currently directing traffic to stop, or parked on a road or highway due to an emergency or road closure;

(4) A person using and holding an electronic wireless communications device directly near the person's ear for the purpose of making, receiving, or conducting a telephone call, provided that the person does not manually enter letters, numbers, or symbols into the device;

(5) A person receiving wireless messages on an electronic wireless communications device regarding the operation or navigation of a motor vehicle; safety-related information, including emergency, traffic, or weather alerts; or data used primarily by the motor vehicle, provided that the person does not hold or support the device with any part of the person's body;

(6) A person using the speaker phone function of the electronic wireless communications device, provided that the person does not hold or support the device with any part of the person's body;

(7) A person using an electronic wireless communications device for navigation purposes, provided that the person does not do either of the following during the use:

(a) Manually enter letters, numbers, or symbols into the device;

(b) Hold or support the device with any part of the person's body.

(8) A person using a feature or function of the electronic wireless communications device with a single touch or single swipe, provided that the person does not do either of the following during the use:

(a) Manually enter letters, numbers, or symbols into the device;

(b) Hold or support the device with any part of the person's body.

(9) A person operating a commercial truck while using a mobile data terminal that transmits and receives data;

(10) A person operating a utility service vehicle or a vehicle for or on behalf of a utility, if the person is acting in response to an emergency, power outage, or circumstance that affects the health or safety of individuals;

(11) A person using an electronic wireless communications device in conjunction with a voice-operated or hands-free feature or function of the vehicle or of the device without the use of either hand except to activate, deactivate, or initiate the feature or function with a single touch or swipe, provided the person does not hold or support the device with any part of the person's body;

(12) A person using technology that physically or electronically integrates the device into the motor vehicle, provided that the person does not do either of the following during the use:

(a) Manually enter letters, numbers, or symbols into the device;

(b) Hold or support the device with any part of the person's body.

(13) A person storing an electronic wireless communications device in a holster, harness, or article of clothing on the person's body.

{¶ 12} Havens argues the state must prove that he violated the statute and "no exception that is provided is applicable otherwise there is no clear path to proof beyond a reasonable doubt of the violation."  Appellant's Brief at 7.

{¶ 13} The gravamen of this assignment of error is how the court should construe this phrase: "Division (A) of this section does not apply to any of the following[.]"  Havens argues we should construe this language as to require the state to prove beyond a reasonable doubt that none of the conduct listed in subsection (B) is present.  The state argues this language is meant to convey that affirmative defenses are available, which a defendant must assert and prove.  We agree with the state.

{¶ 14} In R.C. 2901.05(A), the legislature set forth the general rule of the state's burden to prove elements of an offense and the defendant's burden to prove an affirmative defense:

Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused.

{¶ 15} The statute then defines an affirmative defense as either: "(a) A defense expressly designated as affirmative; [or] (b) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence." R.C. 2901.05(D)(1).

{¶ 16} We first observe that the thirteen subsections of R.C. 4511.204(B) broadly read are generally "an excuse or justification peculiarly within the knowledge of the accused." For example, subsection (B)(2) would excuse from liability a "person driving a public safety vehicle while using an electronic wireless communications device in the course of the person's duties." While an officer could observe whether the vehicle is a public safety vehicle, only the driver would know whether he or she is on duty. Similarly, the other twelve subsections present circumstances that also meet the definition of R.C. 2901.05(D)(1)(b). While it is possible to argue that a situation could meet the definition of an affirmative defense yet the state is required to carry the burden for some reason, further analysis shows this is not the case here.

{¶ 17} We next turn to the entire text of the statute to see if, when placed in its proper context, the meaning becomes clear. *See Look Ahead America v. Stark County Board of Elections*, 2023-Ohio-2494, 221 N.E.3d 896, ¶ 21 (5th Dist.). When doing so, it becomes further evident that the legislative intent here was to create affirmative defenses rather than elements. For example, subsection (B)(4) creates an excuse for "[a] person using and holding an electronic wireless communications device directly near the person's ear for the purpose of making, receiving, or conducting a telephone call, provided that the person does not manually enter letters, numbers, or symbols into the device[.]" A natural way for the officer to determine whether this section applies would be to examine the phone. Yet, subsection (G)(2) expressly denies the officer the authority to seize or search the phone without consent or warrant. This further suggests the legislature intended the driver to come forward with evidence in support of his or her legal excuse for using the device.

{¶ 18} Finally, reading R.C. 4511.204 in pari materia with other traffic offenses also supports the conclusion that the exceptions should be construed as affirmative defenses. When there is some doubt as to the legislative intent of a statute, we should construe the statute at issue to be in accord with other statutes covering the same subject matter, as to give them all their proper force and effect. *See State ex rel. Herman v. Klopfleisch*, 72 Ohio St. 3d 581, 585, 651 N.E.2d 995 (1995). In reviewing the various statutes and precedent related to traffic offenses, it is consistently the case that whenever the offense can be negated by an excuse or justification, it is treated as an affirmative defense. While there may be a contrary case, we did not find it, nor did Havens bring it to our attention. Thus, it is not the case, as Havens argues, that conduct giving rise to the exceptions of

R.C. 4511.204 must be treated as the absence of an excuse or justification that the state must then prove to sustain a conviction. We hold R.C. 4511.204(B) creates a number of different affirmative defenses to the offense.

{¶ 19} Upon review, we find the trial court did not err in finding him guilty as argued by Havens.

{¶ 20} Assignment of Error II is denied.

{¶ 21} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By King, J.

Gwin, P.J. and

Wise, J. concur.