THE STATE EX REL. BARTH ET AL. *v.* HAMILTON
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Barth v. Hamilton Cty.
Bd. of Elections* (1992), 65 Ohio St.3d 219.]

(No. 92–1676—Submitted September 22, 1992—Decided September
24, 1992—Opinion announced December 9, 1992. )

*Donald J. McTigue,* for relators.

*Joseph T. Deters,* Prosecuting Attorney, *Robert E. Taylor* and *James W. Harper,* for respondent board of elections.

*Lee I. Fisher,* Attorney General, and *Cherry L. Poteet,* Assistant Attorney General, for intervening respondent Secretary of State.

*Thompson, Hine & Flory, Gordon M. Strauss, Jack F. Fuchs* and *Joanne Jocha Ervin,* for intervening respondent Guckenberger.

*Per Curiam.* The motions to intervene, which relators do not oppose, are sustained. The motion for leave to file a counterclaim and cross-claim is overruled. Both claims demand a writ of prohibition to prevent placement of Magness's name on the general-election ballot and, therefore, constitute a single cross-claim against respondents, as coparties to Guckenberger. Moreover, under Civ.R. 13(G), cross-claims must arise "out of the transaction or occurrence that is the subject matter * * * of the original action." Relators' complaint arose from the approval of Guckenberger's nomination; whereas Guckenberger's cross-claim arose from the approval of Magness's nomination. These acts may have occurred at approximately the same time, but do not represent a single event.

For a writ of prohibition to issue, we must find that respondents are about to exercise unauthorized quasi-judicial power and that this will cause injury for which relators have no adequate remedy in the ordinary course of the law. *State ex rel. Natalina Food Co. v. Ohio Civ. Rights Comm.* (1990), 55 Ohio St.3d 98, 99, 562 N.E.2d 1383, 1384. In *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 591 N.E.2d 1194, we granted a writ of prohibition to prevent a board of elections from placing a candidate for sheriff on the primary ballot. We reviewed the board's decision in *Shumate* for " 'fraud, * * * abuse of discretion or a clear disregard of statutes or legal provisions.' " *Id.* at 14, 591 N.E.2d at 1196. See, also, *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 598 N.E.2d 1149, where this standard was used to review a tie-breaking decision by the Secretary of State.

Relators argue that Guckenberger's nomination was invalid because (1) the Republican executive committee did not give sufficient notice of the February 19 meeting, (2) the committee could not appoint a nominee before Beckwith's resignation took effect, and (3) Guckenberger was not nominated by a majority vote of the committee. Respondents argue that (1) relators lack standing

to challenge Guckenberger's nomination, (2) the nomination was valid, and (3) relators should be denied relief due to laches. For the reasons that follow, we hold that relators have standing, but that Guckenberger was validly nominated by the executive committee. We, therefore, deny the writ of prohibition and do not decide if delay caused material prejudice in this case.

### Standing

Respondents argue that relators lack standing because they are not members of the Republican executive committee. Relators reply that all electors have a "beneficial interest" in securing compliance with the election laws. Moreover, Barth claims standing based on his status as a registered Republican elector, and Magness claims standing based on her "adverse interest" as the Democratic nominee.

Relators cite *State v. Brown* (1882), 38 Ohio St. 344, and *State ex rel. Gregg v. Tanzey* (1892), 49 Ohio St. 656, 32 N.E. 750. *Brown* and *Gregg* are part of a long line of cases establishing that mandamus is available to enforce public duties, that any duty related to an election is public, and that a citizen has the capacity to sue even if the duty only generally affects him. *State ex rel. Nimon v. Springdale* (1966), 6 Ohio St.2d 1, 4, 35 O.O.2d 1, 3, 215 N.E.2d 592, 595.

The same rule applies in prohibition actions. Thus, in *State ex rel. Newell v. Brown* (1954), 162 Ohio St. 147, 54 O.O. 392, 122 N.E.2d 105, paragraphs one and two of the syllabus, we held:

"1. Ordinarily, a person is not authorized to attack the constitutionality of a statute where his private rights have suffered no interference or impairment, but as a matter of public policy a citizen does have such an interest in his government as to give him capacity to maintain a proper action to enforce the performance of a public duty affecting himself and the citizens generally.

"2. Prohibition is an appropriate proceeding to prevent the Secretary of State or a board of elections from placing on a ballot the names of candidates, which names may not lawfully be placed thereon. * * * " (Citations omitted.)

Respondents cite no persuasive authority for their position. Guckenberger cites *State ex rel. Matasy v. Morley* (1986), 25 Ohio St.3d 22, 25 OBR 18, 494 N.E.2d 1146, and *State ex rel. Masterson v. Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1. *Matasy* held that:

"Pursuant to this court's holding in *State, ex rel. Skilton, v. Miller* (1955), 164 Ohio St. 163 [57 O.O. 145, 128 N.E.2d 47], paragraph two of the syllabus, where 'no legal right of a person can be affected by the failure of a public official to act in any given manner, such person does not have a beneficial interest such as will permit him to maintain an action in mandamus to require

such official to so act.' Similarly, a prohibition action may only be commenced by a person who is either a party to the proceeding sought to be prohibited, *State, ex rel. Pratt, v. Earhart* (1956), 164 Ohio St. 480 [58 O.O. 324, 132 N.E.2d 226], or demonstrates an injury in fact to a legally protected interest. *State, ex rel. Dayton Newspapers, v. Phillips* (1976), 46 Ohio St.2d 457 [75 O.O.2d 511, 351 N.E.2d 127]." *Matasy,* 25 Ohio St.3d at 23, 25 OBR at 19, 494 N.E.2d at 1147.

The *Masterson* court held at paragraph one of the syllabus:

"In the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy."

Neither of these cases involved the enforcement of election laws. Moreover, *Matasy* cited *Skilton* with approval, and *Skilton* also recognized the " * * * line of cases involving election questions * * * [which] held that a citizen has sufficient interest as an elector to maintain an action in mandamus to compel compliance with the election laws." *Skilton,* 164 Ohio St. at 164–165, 57 O.O. at 146, 128 N.E.2d at 49, citing *Brown, Gregg* and *Newell.* Accordingly, we conclude that relators have standing as electors to bring this action.

### Validity of Guckenberger's Nomination

Beckwith resigned her office within the period that requires her successor to be elected at the 1992 general election. R.C. 305.02(A). Thus, under R.C. 3513.31, the Hamilton County Republican Executive Committee was permitted to select and certify its nominee for Beckwith's unexpired term "not later than four p.m. on the tenth day following the day on which the vacancy occur[red]." R.C. 3513.31 also required the committee to meet and select a nominee, to provide two days' notice of the time, place, and purpose of the meeting, and to make the selection by a majority vote of the members in attendance.

Relators first claim that Guckenberger's nomination was invalid because the Republican executive committee did not provide sufficient notice of the purpose for its February 19, 1992 meeting. The notice, which was dated February 12, 1992, stated that the meeting would be held for "Consideration of Candidate Recommendations for the Primary Election Dated May 5, 1992," and that "recommendations of the Chairman of the Central Committee of the Hamilton County Republican Party [would] be considered for approval by the Executive Committee." Relators complain that the notice referred only to candidate recommendations for the 1992 primary and, thus, did not advise that

a nominee would also be selected to run in the general election for Beckwith's unexpired term.

Relators rely on paragraph nine of R.C. 3513.31, *infra*, which, in establishing a procedure for selecting a nominee to run in the general election for an unexpired term, incorporates the provisions of paragraph three of the statute. Paragraph three governs replacement of a nominee for county office who dies or withdraws more than eighty days before the general election. In addition to requiring a meeting to select the successor nominee, paragraph three of R.C. 3513.31 states:

"Such meeting shall be called by the chairman of such committee, who shall give each member of the committee at least two days' notice of the time, place, and purpose of the meeting. If a majority of the members of such committee are present at such meeting, a majority of those present may select a person to fill the vacancy."

In *State ex rel. Ashbrook v. Brown* (1988), 39 Ohio St.3d 115, 117, 529 N.E.2d 896, 898, we considered the sufficiency of notice issued pursuant to this paragraph and held that the notice "fairly inform[ed]" committee members by indicating that a deceased nominee would be replaced at the meeting. Relators contrast the notice in *Ashbrook* with that provided by the Republican executive committee here. They also assert the rule that election statutes are mandatory and require strict compliance. *State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 174, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880.

The notice issued in this case did not specifically refer to selecting a nominee for Beckwith's unexpired term. Moreover, the timing and content of the notice tend to support relators' argument that the Republican executive committee included the Beckwith nomination with the primary nominations to avoid having to meet again. However, neither R.C. 3513.31 nor *Ashbrook* establishes a minimum standard of compliance and, here, the executive committee's notice gave at least some indication that candidates would be selected at the February 19 meeting.

The Secretary of State considered the notice sufficient for this reason. He came to this conclusion, in part, by observing that election laws are to be liberally construed so as to preserve, if possible, the voters' choice as expressed at an election. *McNamara v. Kinney* (1982), 70 Ohio St.2d 63, 67, 24 O.O.3d 118, 120, 434 N.E.2d 1098, 1101. Although the nominee for an unexpired term is selected, not elected, we agree that the nominee's selection is also, in effect, a substitute for the primary process. See R.C. 3513.31 ("In the event that a person has been nominated [for an unexpired term] in a primary election, the authorized committee of that political party shall not

select and certify a person as the party candidate."). See, also, *State ex rel. Gottlieb v. Sulligan* (1963), 175 Ohio St. 238, 242, 24 O.O.2d 383, 385, 193 N.E.2d 270, 273.

Because the R.C. 3513.31 notice requirement could defeat a political party's choice in an election-related process, we find that the rules of strict compliance and liberal construction apply here. To strike a balance between these competing concerns, we hold that notice is mandatory, but that minimal notice is sufficient to comply with the statute and, therefore, that the selection of a nominee for an unexpired term at an upcoming general election is valid as long as some notice preceded the meeting at which the nominee was selected. Accordingly, the notice preceding Guckenberger's nomination was sufficient, and respondents did not disregard R.C. 3513.31 or abuse their discretion in approving that nomination for the general-election ballot.

Relators' second argument is that the Republican executive committee had no authority to nominate Guckenberger before Beckwith's resignation actually took effect. Their argument is based on the ninth paragraph of R.C. 3513.31, which, they claim, makes a vacancy in the office a condition precedent to selecting a nominee. The ninth paragraph provides, in part:

*"If a person holding an elective office dies or resigns* subsequent to the one-hundredth day before the day of a primary election and prior to the fortieth day before the day of the next general election, and if, under the laws of this state, a person may be elected at such general election to fill the unexpired term of the person who has died or resigned, *the appropriate committee of each political party,* acting as in the case of a vacancy in a party nomination, as provided in the first four paragraphs of this section, *may select a person as the party candidate for election for such unexpired term at such general election, and certify his name to the appropriate election official not later than four p.m. on the tenth day following the day on which the vacancy occurs.* When the vacancy occurs fewer than six days before the fortieth day before the general election, the deadline for filing shall be four p.m. on the thirty-sixth day before the general election." (Emphasis added.)

Relators' reading of this paragraph is reasonable. However, the Secretary of State read the statute differently, and his reading is also reasonable. He focused on the language "not later than" and observed that the paragraph sets a deadline for selecting and certifying the nominee, but does not specify a time frame for making the nomination. From this, the Secretary of State concluded that the nomination may be made at any time before the deadline for certifying the nominee, upon two days' notice, and, thus, that a nominee could be named before a vacancy actually occurred in Beckwith's office.

When an election statute is subject to two different, but equally reasonable, interpretations, the interpretation of the Secretary of State, the state's chief election officer, is entitled to more weight. *State ex rel. Beck v. Casey* (1990), 51 Ohio St.3d 79, 81, 554 N.E.2d 1284, 1286. We, therefore, accept the Secretary of State's construction of R.C. 3513.31 and find no abuse of discretion or a clear disregard of the law in respondents' decision to do the same.

Relators also rely on precedent holding that an appointment without a vacancy is void. See, *e.g., State ex rel. Wilson v. Gulvas* (1992), 63 Ohio St.3d 600, 603–604, 589 N.E.2d 1327, 1329–1330. This rule is designed to prevent two persons from holding title to the same office. The rule does not apply here because, under the relevant provisions of R.C. 3513.31, a nominee is appointed to run for a vacant office, not to fill it.

Moreover, the rule that an appointment cannot be made where no vacancy exists does not prevent appointments made in anticipation of a vacancy that ultimately occurs. In *State ex rel. Norman v. Viebranz* (1985), 19 Ohio St.3d 146, 148, 19 OBR 369, 370–371, 483 N.E.2d 1176, 1178, we said:

"In sum, it is the law of Ohio that there can be a valid appointment to an office in advance of the time the vacancy actually occurs. Prospective appointments to office are generally deemed to be effective, with this exception: If the term of the appointing body or officer will expire prior to or at the same time the vacancy will occur, then no power of prospective appointment exists. * * * [Footnote omitted.]"

As the Secretary of State points out, relators do not claim that the Republican executive committee's term expired between the day of Guckenberger's nomination and the day that Beckwith's resignation took effect. Thus, the committee was able to anticipate that vacancy and appoint a nominee to run for the unexpired term of office.

Relators' last argument is that the Republican executive committee did not actually vote on Guckenberger's nomination and thereby violated the requirement in R.C. 3513.31 that the nominee be selected by a majority vote of the committee. They submit affidavits from two committee members who attest that "[t]he endorsement of Mr. Guckenberger was not made by separate motion or vote, but as part of a single vote to endorse all candidates listed by the Chairman."

Relators' evidence contradicts their argument. While the evidence suggests that some committee members may not have been attentive to the significance of their vote on Guckenberger's nomination, it also establishes that a vote occurred. This vote is further confirmed by respondents' evidence, which includes the minutes of the February 19 meeting and the affidavit of the

Hamilton County Republican Party Campaign Chairman. The minutes list Guckenberger's name as one of three candidate recommendations for county commissioner, and the campaign chairman attests that he read Guckenberger's name as the committee's selection for the unexpired term in the office of county commissioner, that Guckenberger's name was moved into nomination and seconded, that no other names were placed in nomination, and that the vote was unanimous.

Based on the foregoing, we find that the Republican executive committee provided sufficient notice of the purpose for its February 19 meeting, that R.C. 3513.31 does not prevent a nomination in anticipation of a vacancy, and that a majority of the committee voted on Guckenberger's nomination.

Accordingly, the writ of prohibition is denied.

*Writ denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.