THE STATE EX REL. BRADY, APPELLEE, *v.* BLACKWELL,
SECY. OF STATE, APPELLANT; CUYAHOGA COUNTY
BOARD OF ELECTIONS ET AL., APPELLEES.

[Cite as *State ex rel. Brady v. Blackwell,*
112 Ohio St.3d 1, 2006-Ohio-5752.]

(No. 2006–1979—Submitted November 1, 2006—Decided November 3, 2006.)

**Per Curiam.**

{¶ 1} This is an appeal from a judgment entered by the court of appeals granting a writ of prohibition precluding the Cuyahoga County Board of Elections from removing appellee Jennifer Brady's name from the November 7 election ballot. Because the procedural posture of this case is such that the secretary of state reasonably believed that he was not required to submit evidence to demonstrate that a tie vote of the Cuyahoga County Board of Elections on protests challenging the board's placement of Brady on the ballot was lawfully broken by the assistant secretary of state, we reverse the judgment of the court of appeals and remand the cause to permit the parties to submit evidence on that issue. We further hold that the court of appeals' decision in this case shall not be cited as appropriate authority on the issues raised.

### Selection and Certification of Jennifer Brady

{¶ 2} Michael J. O'Shea won the May 2006 Democratic primary election for the office of state representative for the 16th Ohio House District. O'Shea subsequently withdrew as the nominee, and on June 27, 2006, Democratic Party district committee members held a meeting at which they selected appellee, Jennifer Brady, to replace O'Shea as the Democratic Party candidate.

{¶ 3} By letter dated July 12, 2006, A. Steven Dever, the chairman of the district committee meeting at which Brady was selected to be the Democratic Party nominee, informed Cuyahoga County Democratic Party Chairman Jimmy Dimora that (1) he had served as chairman of a special meeting called by the

Cuyahoga County Democratic Party for the purpose of selecting a replacement candidate for O'Shea, (2) at the meeting, a quorum was present from each of the cities in the district and the district as a whole, and (3) Brady was nominated and unanimously chosen as the replacement candidate. Dever's letter was not directed to the board of elections, was not sworn under oath, failed to include a notarized statement of a secretary of the district committee meeting, and was not accompanied by a letter from Brady accepting the nomination. See R.C. 3513.31(D).

{¶ 4} By letter dated July 14, 2006, Dimora forwarded the July 12, 2006 letter from Dever to appellee Cuyahoga County Board of Elections. Dimora recommended that the board of elections place Brady's name on the November 7, 2006 ballot as the Democratic candidate for state representative of the 16th Ohio House District. Dimora also requested that the board advise the party "[i]f there are any additional steps necessary to finalize this change." Dimora's letter was not made under oath. The board of elections received Dimora's letter on July 18.

{¶ 5} Subsequently, the board of elections certified Brady as the Democratic candidate for state representative of the 16th Ohio House District.

{¶ 6} On August 22, 2006, the board received a letter from Brady dated August 21, 2006, in which she accepted the nomination to be the Democratic candidate. She also requested that the board contact her "as to any further information that [she] might need to provide." Brady's acceptance letter did not accompany any certification of her selection by Dever or the secretary of the district committee meeting. See R.C. 3513.31(D).

{¶ 7} On August 23, 2006, the board received a letter dated August 22, 2006, from Dimora and Karen Pianka, the recording secretary of the Cuyahoga County Democratic Party. The letter was worded identically to Dimora's July 14 letter and also enclosed Dever's July 12 letter. Dimora and Pianka signed the August 22 letter, and the letter contained the notary stamp of Katrina Dillard. Dimora and Pianka did not, however, certify under oath the accuracy of the contents of the letter, and the notary public did not attest that she had witnessed Dimora or Pianka swearing to the truth of the contents. In addition, neither Dever nor any district-committee-meeting secretary stated under oath that Brady had been selected at the meeting. See R.C. 3513.31(D). Like Dimora's previous letter, the August 22 letter from Dimora and Pianka included a request that the board contact the party if additional actions were required.

## Board of Elections Protest Proceeding

{¶ 8} On September 1 and 6, the board received written protests challenging Brady's candidacy. The protesters claimed that the requirements for certifying Brady as the replacement nominee had not been followed. By affidavit dated

September 14, Dever stated that his July 12 letter to Dimora was true and accurate.

{¶ 9} On September 15, the board of elections held a hearing on the protests. After considering Brady's and the protesters' arguments as well as a written legal opinion prepared by a private law firm at the request of the county prosecuting attorney, the board deadlocked two-to-two on a motion to reject the protests. At the hearing, Dimora conceded that no secretary had been designated to take minutes at the district committee meeting at which the members selected Brady.

### Breaking the Tie Vote

{¶ 10} Pursuant to R.C. 3501.11(X), the board then submitted the matter to appellant, Secretary of State J. Kenneth Blackwell, to break the tie. On October 3, Assistant Secretary of State Monty Lobb asserted by letter that he, Lobb, was breaking the board's deadlock by voting in opposition to the motion to reject the protests against Brady's candidacy for state representative of the 16th Ohio House District. Lobb concluded that "the attempt to name Jennifer Brady as the individual to fill the vacancy as the Democratic nominee for State Representative for the 16th Ohio House District failed to comply—either strictly or substantially—with the mandates of R.C. § 3513.31(D)." The letter did not assert that Secretary of State Blackwell had assigned the responsibility of breaking election board ties to Lobb, nor did it assert that Blackwell was either absent or under a disability precluding Blackwell from breaking the tie. Lobb himself signed the letter as assistant secretary of state.

### Court of Appeals Case

{¶ 11} On October 5, Brady filed a complaint in the Court of Appeals for Cuyahoga County against the secretary of state and the board of elections and its members for a writ of mandamus to keep her name on the ballot. The court of appeals ordered respondents to file a "dispositive motion" and further ordered Brady to file a transcript of the board hearing. In accordance with the court's order, the secretary of state filed a motion to dismiss for failure to state a claim upon which relief can be granted, in which he argued in part that Brady's mandamus claim was an ill-disguised request for a prohibitory injunction. Brady then filed a motion to amend her complaint to add an alternate claim for a writ of prohibition barring the secretary and the board from removing Brady's name from the ballot.

{¶ 12} On October 20, the court of appeals granted a writ of prohibition to keep Brady's name on the ballot. The court of appeals concluded that the secretary of state had failed to submit evidence that Assistant Secretary Lobb was authorized to break the tie vote and that a liberal construction of the pertinent statutes

justified Brady's certification as a candidate. On that same date, the court of appeals granted Brady's motion to amend her complaint to allege an alternate claim for a writ of prohibition.

{¶ 13} On October 23, the secretary appealed from the court of appeals' judgment. We granted the secretary's motion to expedite this appeal, and the parties submitted briefs on October 31. The board of elections and its members filed a brief in which they state that they will not take a substantive position in this appeal and that they will comply with any judgment entered by the court.

{¶ 14} This cause is now before us for a consideration of the merits.

### Tie–Breaking Vote Cast by Assistant Secretary of State

{¶ 15} The court of appeals determined that Brady had established her entitlement to extraordinary relief in prohibition because appellants had not "submitted any evidence that substantiates that the secretary of state specifically delegated his duty under R.C. 3501.11(X)" to break ties to the assistant secretary.

{¶ 16} R.C. 3501.11(X) provides:

{¶ 17} "In all cases of a tie vote or a disagreement in the board, if no decision can be arrived at, the director or chairperson shall submit the matter in controversy, not later than fourteen days after the tie vote or the disagreement, *to the secretary of state, who shall summarily decide the question,* and the secretary of state's decision shall be final." (Emphasis added.)

{¶ 18} R.C. 111.04 provides:

{¶ 19} "In case of the absence or disability of the secretary of state, the assistant secretary of state shall have power to perform the duties of the secretary of state. The general duties of the assistant secretary shall be such as the secretary of state assigns him."

{¶ 20} R.C. 3501.11(X) plainly states that in the case of a tie vote by a board of elections, the director or chairperson "shall submit the matter in controversy * * * to the secretary of state, who shall summarily decide the question." In this case, the authority to break the election board tie rested with Secretary of State Blackwell.

{¶ 21} The first sentence of R.C. 111.04 provides that "[i]n case of the absence or disability of the secretary of state, the assistant secretary of state shall have power to perform the duties of the secretary of state." In this first sentence, the General Assembly has vested the assistant secretary of state with power to perform the duties of the secretary of state in only two situations: absence or disability of the secretary of state.

{¶ 22} The second sentence of R.C. 111.04 authorizes the secretary of state to assign "general" duties to the assistant secretary of state. We need not decide

today whether the secretary's duty under R.C. 3501.11(X) to break a tie vote by a board of elections is a properly assignable duty under the second sentence of R.C. 111.04.

{¶ 23} In the absence of one of the circumstances set forth by the General Assembly, absence, disability, or—possibly—assignment by the secretary, the assistant secretary of state does not have the "power to perform the duties of the secretary of state." R.C. 111.04.

{¶ 24} The court of appeals erroneously concluded that because the secretary did not submit evidence establishing that one of these circumstances occurred so as to authorize the assistant secretary to cast the tie-breaking vote, Brady was entitled to a writ of prohibition to keep her name on the ballot.

{¶ 25} The failure of Secretary of State Blackwell to submit evidence was dictated by the peculiar procedural posture of the case and is not an appropriate basis for issuance of an extraordinary writ of prohibition. Although Brady raised this issue in her brief in support of her complaint, she never specifically alleged in her initial mandamus complaint that the assistant secretary improperly cast the tie-breaking vote. In fact, she alleged in her complaint that "*Blackwell* issued [the] letter ruling." (Emphasis added.) She did, however, attach Assistant Secretary Lobb's tie-breaking decision as an exhibit to her complaint.

{¶ 26} The court of appeals ordered the secretary of state to file a "dispositive motion," which permitted the secretary to file a Civ.R. 12(B)(6) motion to dismiss, a motion that does not require evidentiary support. In his motion, the secretary asserted that Brady's mandamus claim—the only claim then asserted by her— was actually a disguised claim for a prohibitory injunction, i.e., a claim to prevent the secretary and the board of elections from removing her name from the ballot. It was only after the secretary filed this dispositive motion that Brady sought leave to amend her complaint to include a prohibition claim.

{¶ 27} Moreover, the court of appeals granted Brady's motion to amend her complaint to add the prohibition claim on the same date that the court of appeals granted the writ of prohibition. The court of appeals did not give the secretary or Brady the opportunity to submit evidence on the prohibition claim. The Eighth District had before it an insufficient record upon which to order a writ of prohibition based upon the assistant secretary of state's tie-breaking vote. In order to be entitled to a writ of prohibition, Brady had to establish that (1) the secretary of state and the board of elections were about to exercise (or have exercised) quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 21.

{¶ 28} The second element of that standard has yet to be sufficiently addressed. The court of appeals instead decided the merits of the prohibition claim based on the secretary's motion to dismiss the mandamus claim.

{¶ 29} Under these circumstances, with no prohibition claim yet filed, the secretary could have reasonably concluded that he did not need to submit evidence on the R.C. 111.04 issue at the time he filed his motion to dismiss. He should not be penalized for that reasonable belief.

{¶ 30} Therefore, the court of appeals erred in granting the writ of prohibition without giving the secretary the opportunity to submit evidence on the merits of Brady's prohibition claim. A remand to the court of appeals is necessary to permit the parties to submit evidence on whether Assistant Secretary Lobb had the legal authority to break the election board tie. The court of appeals will act with all due haste.

### Conclusion

{¶ 31} Because the court of appeals erred in resolving the issue of whether the assistant secretary was authorized to break the tie vote of the elections board without affording the secretary and Brady the opportunity to submit evidence on this issue, we reverse the judgment of the court of appeals granting the writ of prohibition and remand the cause for further proceedings consistent with this opinion. Moreover, the court of appeals' additional discussion concerning whether the district committee complied with the certification requirements of R.C. 3513.31(D) was premature because the parties had not submitted evidence concerning the threshold issue of whether the assistant secretary's vote to break the elections board's deadlock was authorized. In so holding, we further hold that the court of appeals' decision and judgment shall not be cited as appropriate authority for any of the issues resolved therein.

Judgment reversed
and cause remanded.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., concurs separately.

PFEIFER, J., dissents.

RESNICK, J., not participating.

---

**O'DONNELL, J., concurring.**

{¶ 32} I concur in the judgment reversing the judgment of the court of appeals and remanding the cause so that the parties can submit evidence on the R.C.

111.04 issue. If on remand the secretary of state either exercises his own authority to cast the tie-breaking vote or submits sufficient evidence to establish that he was absent or disabled and thus properly delegated this authority to his assistant secretary, the court of appeals might still issue the writ of prohibition based on its rationale that Brady sufficiently complied with the statutory certification requirements. For the following reasons, however, the court of appeals' holding in this regard is flatly wrong and contrary to both the plain language of the statute and the long-standing precedent of this court.

{¶ 33} Given the proximity of the election, the court of appeals should not follow this erroneous path on remand. Because the majority opinion does not specifically address this issue, I include the following discussion.

R.C. 3513.31(D): Certification of Selection of Replacement Candidate

{¶ 34} The court of appeals held that Brady was entitled to extraordinary relief in prohibition because the secretary of state abused his discretion or clearly disregarded R.C. 3513.31(D) by voting to uphold the protests. The assistant secretary determined that the district-committee-meeting chairman and recording secretary had failed to comply with R.C. 3513.31(D), which specifies the following requirements for selecting and certifying a replacement party nominee in a district election within a county:

{¶ 35} "If a person nominated in a primary election as a party candidate for election at the next general election, whose candidacy is to be submitted to the electors of a district within a county, withdraws as that candidate or is disqualified as that candidate under section 3513.052 of the Revised Code, the vacancy in the party nomination so created may be filled by a district committee consisting of those members of the county central committee or, if so authorized, those members of the county executive committee in that county of a major political party that made the nomination at the primary election who represent the precincts or the wards and townships within the district, if the committee's chairperson and secretary certify the name of the person selected to fill the vacancy by the time specified in this division, at a meeting called for that purpose. The district committee meeting shall be called by the chairperson of the county central committee or executive committee, as appropriate, who shall give each member of the district committee at least two days' notice of the time, place, and purpose of the meeting. If a majority of the members of the district committee are present at the district committee meeting, a majority of those present may select a person to fill the vacancy. *The chairperson and secretary of the district committee meeting shall certify in writing and under oath to the board of the county, not later than four p.m. of the seventy-sixth day before the day of the general election, the name of the person selected to fill the vacancy. The certification must be accompanied by the written acceptance of the nomination*

*by the person whose name is certified.* A vacancy that may be filled by an intermediate or minor political party shall be filed in accordance with the party's rules by authorized officials of the party. Certification must be made as in the manner provided for a major political party." (Emphasis added.)

{¶ 36} R.C. 3513.31(D) thus requires that (1) the district-committee-meeting chairperson and secretary (2) certify in writing and under oath the name of the person selected to fill the vacancy (3) to the board of elections (4) by 4:00 p.m. on the 76th day before the election and (5) that the certification be accompanied by a letter of acceptance of the person so certified. In applying the plain language of the foregoing statute to the uncontroverted facts, it is manifest that none of the correspondence submitted met the specified requirements for a valid certification of Brady as a replacement nominee.

### July 12, 2006 Letter from Dever to Dimora

{¶ 37} The July 12 letter from A. Steven Dever, chairman of the district committee meeting, to party chairman Jimmy Dimora did not comply with R.C. 3513.31(D) because it did not include a certification by the district-committee-meeting secretary, was not made under oath, was not directed to the board of elections, and was not accompanied by a letter of acceptance from Brady.

### July 14 Letter from Dimora to the Board of Elections

{¶ 38} The July 14 letter from Dimora to the board did not comply with R.C. 3513.31(D) because Dimora was neither the district-committee-meeting chairperson nor the secretary, neither Dimora's letter nor the enclosed July 12 letter from Dever to Dimora was sworn, neither letter included a certification by the district-committee-meeting secretary, the enclosed July 12 letter from Dever was not directed to the board, and there was no accompanying letter of acceptance by Brady.

### August 21 Letter of Acceptance from Brady

{¶ 39} The August 21 letter of acceptance from Brady did not comply with R.C. 3513.31(D) because it did not accompany any certification by the district-committee-meeting chairperson and secretary to the board that Brady had been selected at the meeting.

### August 22 Letter from Dimora and Pianka

{¶ 40} The August 22 letter from Dimora and Karen Pianka, which was submitted with the enclosed July 12 letter from Dever to Dimora, did not comply with R.C. 3513.31(D) because neither Dever nor any person designated as the secretary of the district committee meeting certified Brady's selection under oath, and neither Dever nor the district-committee-meeting secretary certified the

selection to the board of elections. Even if Dimora and Pianka's letter could be construed to constitute the certification, there is no indication that either swore to the truth of the contents of their letter or the enclosed letters. Further, the letter was not sworn and notarized.

### September 14 Affidavit of Dever

{¶ 41} The September 14 affidavit of Dever did not comply with R.C. 3513.31(D) because it was not filed by the deadline specified therein, which is by 4:00 p.m. on the 76th day before the pertinent election. August 23, 2006, was the 76th day before the November 7 election. The affidavit also did not include the certification of the district-committee-meeting secretary and was not accompanied by Brady's letter of acceptance.

### Liberal Construction

{¶ 42} The court of appeals appears to have conceded the district committee's noncompliance with R.C. 3513.31(D) but concluded that under a liberal construction of the statute, no violation occurred.

{¶ 43} The court of appeals' reliance on a liberal rule of construction of R.C. 3513.31(D) is misplaced. In construing election requirements, we have consistently held that "the settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971; see, also, *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 42. Because the pertinent portion of R.C. 3513.31(D) does not expressly permit substantial compliance, it requires strict compliance.

{¶ 44} The pertinent provisions of R.C. 3513.31(D) are plain and unambiguous. Therefore, we must apply them as written rather than construe them. *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 27–28 (no need to liberally construe unambiguous election statutes); *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771 (no need to liberally construe an election statute whose meaning is unequivocal and definite).

{¶ 45} The cases cited by the court of appeals in support of its conclusion that R.C. 3513.31(D) must be liberally interpreted are distinguishable. Cf. *State ex rel. Barth v. Hamilton Cty. Bd. of Elections* (1992), 65 Ohio St.3d 219, 222, 602 N.E.2d 1130 (notice of meeting to select replacement nominee sufficiently specified the purpose of the meeting, as required by R.C. 3513.31, by stating that it would be held for " 'Consideration of Candidate Recommendations for the Primary Election Dated May 5, 1992,' " and that " 'recommendations of the Chair-

man of the Central Committee of the Hamilton County Republican Party [would] be considered for approval by the Executive Committee' "); *State ex rel. Flex v. Gwin* (1969), 20 Ohio St.2d 29, 49 O.O.2d 185, 252 N.E.2d 289 (where declared candidate was ineligible by reason of age, there was an involuntary withdrawal that permitted appointment of another candidate); *State ex rel. Giuliani v. Cuyahoga Cty. Bd. of Elections* (1984), 14 Ohio St.3d 8, 14 OBR 314, 471 N.E.2d 148 (political party was permitted by R.C. 3513.31 to fill vacancy created in judicial candidacy where original candidacy would have required a party nominating petition and primary election).

{¶ 46} In *Barth,* 65 Ohio St.3d 219, 602 N.E.2d 1130, we construed an undefined word in R.C. 3513.31 to determine when a notice of a meeting sufficiently specified the purpose of that meeting. And as the secretary notes, the court has specifically observed that in *Flex,* 20 Ohio St.2d 29, 49 O.O.2d 185, 252 N.E.2d 289, and *Giuliani,* 14 Ohio St.3d 8, 14 OBR 314, 471 N.E.2d 148, "we employed the policy favoring free and competitive elections to construe *ambiguous election statutes* and preserve candidates' placement on the ballot." (Emphasis added.) *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 7, 598 N.E.2d 1152. By contrast, the provisions of R.C. 3513.31 at issue here are patent and unambiguous. "Where duties are unambiguously imposed by election laws, we cannot use public policy to circumvent them." Id.

{¶ 47} Similarly, Brady's reliance on cases like *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 43 O.O.2d 286, 237 N.E.2d 313, is misplaced. In *Stern,* 14 Ohio St.2d at 184, 43 O.O.2d 286, 237 N.E.2d 313, we emphasized that "[t]he public policy which favors free competitive elections, in which the electorate has the opportunity to make a choice between candidates, outweighs the arguments for absolute compliance with each technical requirement in the petition form, *where the statute requires only substantial compliance * * *.*" (Emphasis added.) In that case, the statute at issue—R.C. 3513.07—specifically permitted the form of declaration of candidacy and petition to "be substantially as" set forth in the statute. As noted previously, R.C. 3513.31(D) does not permit such substantial compliance here.

### Estoppel and Duty to Defer

{¶ 48} The court of appeals emphasized in its decision that the board of elections failed to advise Brady and the county chairman of the proper actions to take under R.C. 3513.31(D), despite their requests. The board's possible negligence, however, in failing to properly inform them of the certification requirements did not estop the secretary from invalidating Brady's candidacy for failure to comply with R.C. 3513.31(D). See, e.g., *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 37 (estoppel is inapplicable to election officials in the exercise of governmental functions).

{¶ 49} Moreover, we must defer to the secretary's reasonable interpretation of election laws. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 586, 651 N.E.2d 995. The secretary's interpretation of R.C. 3513.31(D) is reasonable because it is based on the statute's plain language.

## Conclusion

{¶ 50} Based on the foregoing, the court of appeals erred in granting a writ of prohibition to keep Brady's name on the ballot because Brady's name was not properly certified in accordance with R.C. 3513.31(D). The secretary's conclusion on this issue was neither unreasonable, arbitrary, nor unconscionable. With these additional observations, I concur in the judgment.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

**PFEIFER, J., dissenting.**

{¶ 51} The time to establish Monty Lobb's authority to break the tie in this election matter was at the time the letter was written. The secretary of state cannot use this prohibition action to fix an error that was made in the October 3, 2006 letter. The Lobb letter, which established no authority for him to make the tie-breaking ruling, was void on its face. I would affirm the judgment of the court of appeals.

---

McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis; O'Shea & Associates Co., L.P.A., and Michael O'Shea; and Mark Griffin, for appellee Jennifer Brady.

Jim Petro, Attorney General, and Sharon A. Jennings and Richard N. Coglianese, Assistant Attorneys General; Langdon & Hartman, L.L.C., David R. Langdon, Curt C. Hartman, and Joshua B. Bolinger, for appellant.

Duvin, Cahn & Hutton and Robert M. Wolff, for appellees Cuyahoga County Board of Elections, Robert T. Bennett, Sally D. Florkiewicz, Edward C. Coaxum Jr., and Loree K. Soggs.