OPINION
{¶ 1} Defendant-appellant, Tara M. Reedy ("appellant"), appeals from the judgment of the Franklin County Municipal Court, which denied her motion to suppress evidence obtained from a breath-alcohol concentration test. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} On September 4, 2004, appellant was arrested for operating a vehicle under the influence of alcohol ("OVI") and was transported to Columbus police headquarters, where she agreed to submit to a breath analysis test. Officer Steven Wolfangel of the Columbus Division of Police administered the breath test using an instrument known as a BAC DataMaster Option K. Appellant's breath registered at 0.213 grams of alcohol per 210 liters of breath. Appellant was charged with operating a vehicle under the influence of alcohol, pursuant to R.C. 4511.19(A)(1) and 4511.19(A)(8), and with a continuous lane violation, pursuant to R.C. 4511.33. At her arraignment, appellant entered a plea of not guilty on all counts.
 {¶ 3} On December 13, 2004, appellant moved the trial court to suppress evidence obtained from her breath test. The trial court conducted a hearing on appellant's motion and, after hearing testimony from Columbus Police Officers Wolfangel, Kevin J. McAndrew, and Stephen Banks, and from Sergeant Jeffrey Sowards, the trial court permitted the parties to submit briefs regarding the admissibility of evidence obtained from the breath test. On April 8, 2005, the trial court issued findings of fact and conclusions of law, overruling appellant's motion to suppress.
 {¶ 4} On May 2, 2002, appellant entered a plea of no contest to all charges. The trial court found appellant guilty on all counts and sentenced her accordingly. This appeal followed. In her single assignment of error, appellant asserts:
The Trial Court erred in not granting [appellant's] Motion to Suppress the evidence obtained from the breathalyzer test administered by the Columbus Police Department.[1]
 {¶ 5} An appellate court's standard of review on a motion to suppress is two-fold. See State v. Lloyd (1998),126 Ohio App.3d 95, 100-101. Since the trial court is in the best position to evaluate witness credibility, we must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Klein (1991), 73 Ohio App.3d 486, 488; see, also, Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608, discretionary appeal not allowed (1995), 71 Ohio St.3d 1445. Here, appellant does not contest the trial court's findings of fact. Once we have accepted the trial court's findings of fact, we must independently determine, as a matter of law, without deferring to the trial court's conclusions, whether the facts met the applicable legal standard. State v. Claytor (1993),85 Ohio App.3d 623, 627.
 {¶ 6} Appellant argues that the trial court erred in overruling her motion to suppress because appellee, the State of Ohio ("state"), failed to substantially comply with applicable alcohol testing regulations. The Ohio General Assembly has charged the Director of Health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath[.]" R.C. 3701.143. The regulations set forth at Ohio Adm. Code 3701-53-01 et seq. constitute the approved techniques or methods for chemically analyzing a person's breath. Breath samples must be analyzed for alcohol content "in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director [of health] pursuant to section 3701.143
of the Revised Code." R.C. 4511.19(D)(1). The state must establish that it substantially complied with regulations regarding alcohol testing before breath test results will be admissible in the prosecution of an OVI offense. State v.Plummer (1986), 22 Ohio St.3d 292, 294; State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 27.
 {¶ 7} Relevant to this appeal, appellant contends that the state failed to comply with Ohio Adm. Code 3701-53-02, which provides, in pertinent part:
(A) The instruments listed in this paragraph are approved as evidential breath testing instruments for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by [R.C.] 4511.19 * * *. The approved evidential breath testing instruments are:
(1) BAC DataMaster, BAC DataMaster cdm;
(2) Intoxilyzer model 5000 series 66, 68 and 68 EN.
Appellant argues that Officer Wolfangel, who conducted appellant's breath test using a BAC DataMaster Option K, used an unapproved testing instrument and that the test results are, therefore, inadmissible.
 {¶ 8} The terms "BAC DataMaster," "BAC DataMaster cdm," and "DataMaster" are registered trademarks of National Patent Analytical Systems, Inc. ("NPAS"), and refer to products that NPAS manufactures and markets for use in evidential breath alcohol testing. As relevant to this appeal, NPAS manufactures three "DataMaster" models, which test for the presence and quantity of alcohol in a person's breath using the principle of Infrared absorption. The original or standard BAC DataMaster utilizes an external keyboard, whereas the BAC DataMaster Option K incorporates an integrated keyboard. The BAC DataMaster cdm is a smaller and lighter instrument. Appellant argues that, because Ohio Adm. Code 3701-53-02(A) does not expressly list "Option K," the BAC DataMaster Option K is not an approved instrument and, by using such an instrument, the state failed to substantially comply with the regulation.
 {¶ 9} The state argues that it strictly complied with Ohio Adm. Code 3701-53-02 because the BAC DataMaster Option K is included within the regulation's listing of BAC DataMaster. Alternatively, the state argues that it substantially complied with Ohio Adm. Code 3701-53-02. In either scenario, the state argues that the trial court did not err by overruling appellant's motion to suppress. The trial court concluded that the BAC DataMaster Option K falls within the meaning of BAC DataMaster, as used in Ohio Adm. Code 3701-53-02(A), and that the state, therefore, strictly complied with the regulation when testing appellant's breath. We agree.
 {¶ 10} In determining whether the state complied with Ohio Adm. Code 3701-53-02, we are aided by rules of statutory construction, which apply to administrative rules and regulations having the effect of legislative enactment. See, e.g., State exrel. R. Bauer Sons Roofing Siding, Inc. v. Indus. Comm.
(1998), 84 Ohio St.3d 62, 66; State ex rel. Miller Plumbing Co.v. Indus. Comm. (1948), 149 Ohio St. 493, 496-497. "An administrative rule, `* * * issued pursuant to statutory authority, has the force and effect of law unless it is unreasonable or is in clear conflict with statutory enactment governing the same subject matter.'" Youngstown Sheet Tube Co.v. Lindley (1988), 38 Ohio St.3d 232, 234, quoting KrogerGrocery Baking Co. v. Glander (1948), 149 Ohio St. 120, 125. We are required to give considerable deference to an administrative agency's interpretation of its own rules and regulations. State v. Anderson, Franklin App. No. 04AP-1171,2005-Ohio-5243, at ¶ 14, citing City of Columbus v. Childs,
Franklin App. No. 04AP-911, 2005-Ohio-3683.
 {¶ 11} Appellant argues that R.C. 2901.04(A) requires us to construe Ohio Adm. Code 3701-53-02 in her favor and to conclude that the BAC DataMaster Option K is not an approved instrument. R.C. 2901.04(A) provides that "[e]xcept as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A) applies to penalties defined anywhere in the Ohio Revised Code. Shotz Bar Grill, Inc. v. Ohio LiquorControl Comm., Franklin App. No. 02AP-1141, 2003-Ohio-2659, at ¶ 34. However, R.C. 2901.04(A) does not apply to an Ohio Administrative Code provision, such as Ohio Adm. Code 3701-53-02, which defines neither an offense nor a penalty, and we decline to apply it here.
 {¶ 12} The foremost consideration in determining the meaning of a statute is legislative intent. State v. Jackson,102 Ohio St.3d 380, 2004-Ohio-3206, at ¶ 34. "To determine the legislative intent, we first review the statutory language[,] * * * [according] the words used their usual, normal, or customary meaning." State ex rel. Wolfe v. Delaware Cty. Bd. of Elections
(2000), 88 Ohio St.3d 182, 184. When plain and unambiguous statutory language conveys a clear and definite meaning, there is no need for courts to apply rules of statutory interpretation; the court must give effect to the words used. State ex rel.Jones v. Conrad (2001), 92 Ohio St.3d 389, 392; State v. Elam
(1994), 68 Ohio St.3d 585, 587. Courts may not ignore plain and unambiguous statutory language. Bd. of Edn. v. Fulton CountyBudget Comm. (1975), 41 Ohio St.2d 147, 156.
 {¶ 13} We find that the regulatory language, which defines instruments approved for evidential breath testing, is ambiguous. Ohio Adm. Code 3701-53-02 does not define the term BAC DataMaster and, contrary to appellant's assertion, that term is subject to different reasonable interpretations. When statutory language is subject to more than one reasonable interpretation, it is ambiguous and the court must give effect to the legislature's intent when construing such language. Family Medicine Found.,Inc. v. Bright, 96 Ohio St.3d 183, 2002-Ohio-4034, at ¶ 8-9. A court may look to a host of factors, including the purpose of the statute, to determine legislative intent. Id.; Jackson at ¶ 34.
 {¶ 14} The purpose of the regulations regarding breath testing is to ensure the most accurate and reliable test results.State v. Dickerson (1986), 25 Ohio St.3d 64, 65-66. At the suppression hearing, Officer McAndrew, a court liaison officer and senior calibration officer with the Columbus Division of Police, testified that the only difference between the BAC DataMaster Option K and the standard BAC DataMaster that he was aware of is that the Option K model contains an integrated, rather than an external, keyboard. Officer McAndrew admitted he has no knowledge of whether the BAC DataMaster Option K differs from the standard BAC DataMaster in terms of the scientific procedures or technology used. However, the state submitted that the National Highway Traffic Safety Administration ("NHTSA") has determined that the presence of an internal keyboard does not affect the precision and accuracy of a BAC DataMaster instrument. See 58 F.R. 48705, Appendix A, fn. 2. Thus, the trial court had before it evidence that the BAC DataMaster Option K did not differ from the standard BAC DataMaster in terms of accuracy and reliability.
 {¶ 15} In support of her position that the BAC DataMaster Option K is an unapproved instrument, appellant relies on the general rule of statutory construction expressio unius est esclusio alterius, which provides that the expression of one or more items of a class implies that those not identified are excluded. State v. Droste (1998), 83 Ohio St.3d 36, 39, certiorari denied (1999), 526 U.S. 1145. Appellant argues that the inclusion of only BAC DataMaster and BAC DataMaster cdm in Ohio Adm. Code 3701-53-02(A), evidences the Director of Health's intention to not approve the BAC DataMaster Option K. However, the general rule is "not an interpretive singularity but merely an aid to statutory construction, which must yield whenever a contrary legislative intent is apparent." Baltimore Ravens, Inc.v. Self-Insuring Emp. Evaluation Bd. (2002), 94 Ohio St.3d 449,455.
 {¶ 16} At the suppression hearing and in its post-hearing brief, the state submitted extrinsic evidence to demonstrate that the BAC DataMaster Option K is included within the regulation's use of the term BAC DataMaster. The state submitted the BAC DataMaster Basic Operator Guide ("Operator Guide") and the BAC DataMaster DataMaster cdm Supervisor Guide ("Supervisor Guide") issued by NPAS in an effort to demonstrate that the term BAC DataMaster refers to both the standard model, with an external keyboard, and the Option K model, with an internal keyboard.
 {¶ 17} The introduction to the Operator Guide states that it "cover[s] an overview of the BAC DataMaster" and contains information "generic for the Standard DataMaster (with external keyboard) and the BAC DataMaster Option `K' (built in keyboard)." The Operator Guide refers to the two models, generically, as "BAC DataMaster." Similarly, the Supervisor Guide covers "advanced features of the BAC DataMaster" and contains information generic for "the standard DataMaster, the DataMaster with the `K' Option (with internal keyboard), and the DataMaster cdm[,]" all three of which the Supervisor Guide generically refers to as "BAC DataMaster." Despite its acknowledgement of the BAC DataMaster Option K, the Supervisor Guide states that "NPAS provides analytical devices known in the marketplace as the `BAC DataMaster,' `DataMaster' and `DataMaster cdm' instruments to be used in the measurement of alcohol in the breath of human subjects." Nowhere, in either the Operator Guide or Supervisor Guide, does NPAS use the term "BAC DataMaster" to distinguish between an instrument with an internal keyboard and an instrument with an external keyboard.
 {¶ 18} The state also argues that an industry standard on the meaning of the term BAC DataMaster establishes that the BAC DataMaster Option K, but not the BAC DataMaster cdm, is included within that term. NHTSA publishes a Conforming Products List ("CPL") of instruments that conform to Model Specifications for Evidential Breath Testing Devices ("Model Specifications"). On September 17, 1993, NHTSA published a notice to amend the Model Specifications, effective October 18, 1993. See 58 F.R. 48705. Appendix A to that notice sets forth the CPL, which lists BAC DataMaster and BAC DataMaster — Transportable.[2] A footnote to the CPL's listing of BAC DataMaster provides:
During this reporting period, [NPAS] provided VNTSC[3]
with a BAC DataMaster having an internal keyboard. The addition of a keyboard, whether internal or external, does not affect precision and accuracy and does not require a separate listing on the CPL. Therefore the model designation "BAC DataMaster," for the purposes of the CPL, includes all such instruments, whether or not they have a keyboard.
Id. at Appendix A, fn. 2. The current version of the CPL maintains the designation of "BAC DataMaster" to refer to instruments with or without a keyboard.
 {¶ 19} Although NHTSA rejected a separate CPL listing for the BAC DataMaster Option K, it later acknowledged the necessity of separately listing the BAC DataMaster cdm and, effective February 27, 1998, amended the CPL to include the BAC DataMaster cdm.63 F.R. 10066-01. Thus, prior to the effective date of the current version of Ohio Adm. Code 3701-53-02, the CPL listed both the BAC DataMaster, which NHTSA interpreted to include both the standard and Option K models, and the BAC DataMaster cdm as conforming evidential breath testing instruments.
 {¶ 20} In addition to the NPAS manuals and the NHTSA CPLs, the state submitted the Department of Heath's Bureau of Alcohol and Drug Testing Renewal BAC DataMaster Manual ("Manual"). Officer McAndrew testified that officers use the Manual as a study guide for their certification renewal tests. The Manual quotes the current version of Ohio Adm. Code 3701-53-02, identifying the approved evidential breath testing instruments as "BAC DataMaster [and] BAC DataMaster cdm." However, the Manual goes on to provide information about and instructions for the use of the BAC DataMaster cdm and both the standard BAC DataMaster and the BAC DataMaster Option K.
 {¶ 21} In a section entitled "BAC DataMaster nomenclature," the Manual pictures three breath testing instruments, labeled "standard," "`K' Model," and "CDM." The Manual also includes an Operational Checklist, which sets forth instructions for the use of "BAC DataMaster Standard," "BAC DataMaster `K' Model," and "BAC DataMaster cdm." The instructions for use of the BAC DataMaster cdm differ from the instructions for the "BAC DataMaster Standard" and the "BAC DataMaster `K' Model." The Manual's operating instructions for the "BAC DataMaster Standard" and "BAC DataMaster `K' Model" are identical. Similarly, the Manual's Instrument Checklist for the BAC DataMaster cdm differs from the Instrument Checklist that applies to both the "BAC DataMaster Standard" and "BAC DataMaster `K' Model." Nowhere does the Manual utilize the term BAC DataMaster to distinguish between an instrument with an external keyboard and an instrument with an internal keyboard.
 {¶ 22} Appellant concedes that the Department of Health's actions constitute evidence of its intent, but argues that the state may not use the Manual to supplant properly promulgated regulations. Relying on the Sixth District Court of Appeals' opinion in State v. Gigliotti (Dec. 22, 2000), Erie App. No. E-99-081, appellant suggests that the state is improperly treating the Manual itself as a lengthy series of regulations. InGigliotti, a defendant charged with driving under the influence of alcohol challenged the results of his breath tests, arguing that the tests violated a directive contained in a Department of Health memorandum. The memorandum included a statement that "[e]ffective immediately an `invalid sample' indication of the BAC Verifier or BAC DataMaster is to be handled by initiating a new 20 minute observation period." In Gigliotti, the Ohio State Highway Patrol retested the defendant's breath three minutes after an initial invalid sample. The Sixth District noted that breath tests must be analyzed in accordance with methods approved by the Director of Health, as expressed in applicable regulations, and recognized that the applicable regulations did not require a second, 20-minute waiting period. The Sixth District held that the Department of Health memorandum did not rise to the level of an administrative regulation and was not enforceable.
 {¶ 23} The case sub judice is distinguishable fromGigliotti. In Gigliotti, the defendant argued that the directive in the Department of Health memorandum imposed upon the state an additional requirement, not contained in the regulations. Here, the state submits the Manual merely as an interpretive aid to ascertain the meaning of the term BAC DataMaster in Ohio Adm. Code 3701-53-02. The state does not offer the Manual as an additional or contradictory requirement and is not attempting to supplant applicable regulations. Accordingly,Gigliotti does not support appellant's position that we may not consider the Manual as evidence of the Department of Health's interpretation of the term BAC DataMaster in Ohio Adm. Code3701-53-02.
 {¶ 24} Contrary to appellant's argument, we conclude that the Department of Health's inclusion of diagrams and instructions relating to the BAC DataMaster Option K in the Manual indicates the Department of Health's intention and interpretation that such instrument is an approved evidential testing device. Had the Department of Health not interpreted BAC DataMaster to include the BAC DataMaster Option K, it would not have included diagrams and instructions for the use of the Option K model in its training manual. Courts must give due deference "`to an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself.'" Stateex rel. Saunders v. Indus. Comm., 101 Ohio St.3d 125,2004-Ohio-339, at ¶ 41, quoting OPUS III-VII Corp. v. Ohio Bd.of Pharmacy (1996), 109 Ohio App.3d 102, 112-113. The Manual distributed by the Department of Health indicates that the agency considers the BAC DataMaster Option K to fall within the meaning of BAC DataMaster, as used in Ohio Adm. Code 3701-53-02, and we do not find the Department of Health's interpretation inconsistent with statutory law or the plain language of the regulation.
 {¶ 25} The fact that the Department of Health added a listing for the BAC DataMaster cdm to the current version of Ohio Adm. Code 3701-53-02, without adding a listing for the BAC DataMaster Option K, does not evidence a specific intention to exclude the BAC DataMaster Option K as an approved instrument. As stated above, prior to the most recent revisions to Ohio Adm. Code3701-53-02, NHTSA had already concluded that the term BAC DataMaster included both the model with an external keyboard and the Option K model with an integrated keyboard, concluding that the accuracy and precision of the instrument is not affected by the addition of a keyboard. Unlike the BAC DataMaster Option K, the BAC DataMaster cdm has fundamental differences from the standard BAC DataMaster, including being a smaller, transportable device with a shorter Total Path Length and smaller volume. Upon review, and in light of the Department of Health's inclusion of the BAC DataMaster Option K in the Manual, we do not find that the addition of BAC DataMaster cdm to the current version of Ohio Adm. Code 3701-53-02 indicates a clear intent to exclude the BAC DataMaster Option K from approved status.
 {¶ 26} Contrary to appellant's suggestion, our holding here is not meant to suggest that any model of BAC DataMaster constitutes an approved evidential breath testing device. However, the differences between the standard BAC DataMaster and the BAC DataMaster Option K are de minimis. Moreover, the trial court had before it evidence that the Department of Health considered the BAC DataMaster Option K an approved instrument. Giving due deference to the Department of Health's interpretation of Ohio Adm. Code 3701-53-02 and upon consideration of the purpose of the regulation and the evidence before the trial court, we conclude that the state strictly complied with the applicable regulatory requirements when conducting appellant's breath test and that the trial court did not err by denying appellant's motion to suppress.
 {¶ 27} Because the state strictly complied with Ohio Adm. Code3701-53-02, we overrule appellant's assignment of error and, accordingly, affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Bryant and Petree, JJ., concur.
[1] In her appellate brief, appellant also argued that the trial court erred in admitting the Bureau of Alcohol and Drug Testing renewal BAC DataMaster manual at the suppression hearing, contending that it was irrelevant. Appellant withdrew this argument at oral argument, and we do not address it here.
[2] NHTSA removed "BAC DataMaster-Transportable" from the CPL, effective March 16, 1995, upon determining that NPAS no longer manufactured that instrument and that no such instruments remained in use. See 60 F.R. 14320.
[3] The Vople National Transportation Systems Center ("VNTSC") conducts testing of evidential breath testers for compliance with the Model Specifications. 58 F.R. 48705.