THE STATE OF OHIO, APPELLEE, *v*. COBURN ET AL., APPELLANTS.

[Cite as *State v. Coburn*, 121 Ohio St.3d 310, 2009-Ohio-834.]

*Wildlife – Wildlife officers – Statutory privilege to enter private land without warrant – Officer may enter private land pursuant to R.C. 1531.13 when there is good cause to believe law is being violated – Officer may enter private land pursuant to R.C. 1531.14 without good cause to believe law is being violated when officer is acting in normal, peaceful, and lawful pursuit of enforcement of laws relating to game and fish.*

(No. 2008-0536 — Submitted December 17, 2008 — Decided March 5, 2009.)

APPEAL from the Court of Appeals for Erie County, Nos. E-07-049, E-07-050, and E-07-051, 176 Ohio App.3d 600, 2008-Ohio-371.

_____

SYLLABUS OF THE COURT

A state wildlife officer may enter private land pursuant to R.C. 1531.13 when he or she has good cause to believe that a law is being violated, and may enter private land pursuant to R.C. 1531.14 without good cause when acting in the normal, peaceful, and lawful pursuit of the enforcement of laws relating to game and fish.

_____

MOYER, C.J.

### I. Introduction

{¶1} This case requires us to determine the extent of a state wildlife officer's statutory authority to enter private land. We hold that a wildlife officer may enter private land pursuant to R.C. 1531.13 if the officer has good cause to believe that a law is being violated or if the officer is acting in the normal, peaceful, and lawful pursuit of enforcing laws relating to game and fish pursuant

to R.C. 1531.14. Because we find that the state wildlife officer properly entered the private land at issue in this case pursuant to his powers under R.C. 1531.14, we affirm the judgment of the court of appeals.

## II. Background

{¶2} Appellant William Coburn ("Coburn") owns private land in Erie County. On September 1, 2006, Coburn was hunting mourning doves on his land with his father, appellant Marvin Coburn, and friend, appellant Todd Parkison. An Erie County wildlife officer observed the appellants hunting for a short time before approaching them to check their hunting licenses and to determine whether they were complying with the applicable bag limits.

{¶3} During this encounter, the officer noticed wheat seed scattered about and in piles on the ground. Based on this observation, the officer suspected that the appellants were baiting migratory game birds in violation of R.C. 1531.02 and Ohio Adm.Code 1501:31-7-02(A)(9). The officer left Coburn's land and returned a short time later with another agent to investigate the area; they found additional wheat seed near the hunting location. Several weeks later, the appellants were each charged with hunting migratory game birds on or over a baited area, a fourth-degree misdemeanor.

{¶4} All three appellants moved to dismiss the complaints against them. The trial court found that the officer was required to have good cause to enter Coburn's land pursuant to R.C. 1531.13 and that because no evidence of good cause existed in the record, the officer was not permitted to enter the land. Because the officer did not make the observations that led to the baiting charges until after he had entered Coburn's property, the trial court dismissed the complaints against all three appellants.[1]

---

1. In their briefs before this court, the state and its amicus argue that the trial court erroneously granted the motions to dismiss because such motions may be used only to challenge the sufficiency of the charging document, not to address such issues as the sufficiency of evidence.

**{¶5}** The court of appeals reversed the trial court judgment with respect to all appellants and remanded for further proceedings, holding that R.C. 1531.14 gave the officer the authority to enter Coburn's land: "Once he saw people hunting, R.C. 1531.14 gave [the officer] the authority to enter the land in pursuit of his duties, one of which is to ensure that people are hunting lawfully." *State v. Coburn*, 176 Ohio App.3d 600, 2008-Ohio-371, 893 N.E.2d 201, ¶ 15.

**{¶6}** We accepted appellants' consolidated discretionary appeal. *State v. Coburn*, 118 Ohio St.3d 1461, 2008-Ohio-2823, 888 N.E.2d 1113.

### III. Independent Sources of Authority

**{¶7}** Because the evidence of baiting was plainly visible to the officer only after he entered Coburn's private land, the critical issue in the motion to dismiss was whether the officer had the authority to enter the land. Thus, while appellants raise two propositions of law for our review, they pose only one legal question: Under what circumstances may a state wildlife officer enter private land?

**{¶8}** Two statutes apply to this issue: R.C. 1531.13 and 1531.14. When interpreting statutes, we must first examine the plain language and apply the statute as written when its meaning is clear and unambiguous. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9.

**{¶9}** R.C. 1531.13 provides as follows: "Any regularly employed salaried wildlife officer may enter any private lands or waters if the wildlife officer has good cause to believe and does believe that a law is being violated." The meaning of this provision is clear, unambiguous, and not disputed by the parties – when a wildlife officer has good cause to believe that a law is being violated, and does so believe, he or she may enter upon private lands to

---

However, the state did not raise this challenge in the trial court or the court of appeals, and we did not accept it for review. Therefore, the challenge has been waived. See *State ex rel. Porter v. Cleveland Dept. of Pub. Safety* (1998)*,* 84 Ohio St.3d 258, 259, 703 N.E.2d 308.

investigate the potential violation.  Because there in no evidence in the record that the officer in this case had good cause to believe that appellants were violating the law at the beginning of the encounter, the officer did not have authority under R.C. 1531.13 to enter Coburn's land.

{¶10}  However, R.C. 1531.14 gives wildlife officers an additional form of authority to enter private land: "Any person regularly employed by the division of wildlife * * * in the enforcement of laws or division rules relating to game or fish, * * * while in the normal, lawful, and peaceful pursuit of such investigation, work, or enforcement may enter upon, cross over, be upon, and remain upon privately owned lands for such purposes and shall not be subject to arrest for trespass while so engaged or for such cause thereafter."  This provision is similarly clear and unambiguous; it plainly permits wildlife officers to enter upon private land while in the normal, lawful, and peaceful pursuit of enforcing laws relating to game and fish.

{¶11}  In this case, the officer stated that he entered Coburn's land to check appellants' hunting licenses and to ensure that they were complying with the applicable bag limits pursuant to his statutory powers to do so.  Under R.C. 1533.14, hunters must carry their hunting licenses and exhibit them to wildlife officers upon request; the failure to do so is a citable offense.  Although Coburn was not required to have a license, because he was hunting on his own land, see R.C. 1533.10, the other two appellants were required to have licenses, and the officer was entitled to approach them to inspect their licenses.  Likewise, R.C. 1531.13 gives wildlife officers the authority to "inspect any container or package at any time except when within a building and the owner or person in charge of the building objects."  This inspection "shall be only for bag limits of wild animals." Id.  Because the appellants were not within a building at the time of the encounter, the officer had the authority to approach them to conduct a bag-limit inspection.

4

**{¶12}** As the foregoing demonstrates, the officer was acting in the normal, lawful, and peaceful pursuit of his law-enforcement powers when he approached the appellants. The officer therefore had the authority to enter Coburn's land under the plain language of R.C. 1531.14.

**{¶13}** The appellants argue that a review of the statutes in pari materia reveals that R.C. 1531.13 limits a wildlife officer's authority under R.C. 1531.14, so that officers may enter private land to check licenses and bag-limit compliance only when they have good cause to believe that a law is being violated. However, even if we read the statutes in pari materia, which is unnecessary when the statutes are not ambiguous, see *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 585, 651 N.E.2d 995, it is clear that R.C. 1531.13 and 1531.14 provide independent forms of authority.

**{¶14}** The statutes do not refer to each other or suggest that the powers listed therein are conditional on any other subsections. It is certainly true that the powers in these two sections may overlap in certain circumstances. For example, if a wildlife officer has reliable information that a group of hunters is illegally baiting birds, the officer may approach them both to check their licenses and bag-limit compliance under R.C. 1531.14 and to investigate what the officer has good cause to believe is a violation of the law under R.C. 1531.13. However, there is absolutely nothing in the statutory scheme that suggests that a wildlife officer may enforce routine laws, e.g., determining whether hunters are licensed (or properly exempted from license requirements) and complying with bag limits under R.C. 1531.13, only when they have good cause to believe that such laws are being violated. Appellants' reading would essentially eliminate the plain language of R.C. 1531.14, which we must avoid in construing statutes. See *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, ¶ 8.

**{¶15}** Given the independent nature of these powers, we reject the appellants' argument that wildlife officers may enter private land only if they have good cause to believe that a law has been violated.

### IV. Conclusion

**{¶16}** A state wildlife officer may enter private land pursuant to R.C. 1531.13 when the officer has good cause to believe that a law is being violated, and may enter private land pursuant to R.C. 1531.14 without good cause when acting in the normal, peaceful, and lawful pursuit of the enforcement of laws relating to game and fish. Because the officer's observations of unlawful baiting in this case were made after he validly entered Coburn's land to check hunting licenses and bag-limit compliance under R.C. 1531.14, the trial court erred in dismissing the complaints, and the court of appeals properly reversed the judgment and remanded the case for further proceedings.

Judgment affirmed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., concurs separately.

_____

**O'DONNELL, J., concurring.**

**{¶17}** I concur, but do so reluctantly. In my view, the statutes in this case do not cohere. R.C. 1531.13 requires that a wildlife officer have both a good cause to believe and an actual belief that the law is being violated before he is permitted to enter private land pursuant to R.C. 1531.13.

**{¶18}** At the same time, R.C. 1531.14 provides that any person employed by the division of wildlife who is engaged "in the enforcement of laws or division rules relating to game or fish" may enter private lands "while in the normal, lawful, and peaceful pursuit" of such enforcement. R.C. 1531.14 therefore provides an independent source of authority for a wildlife officer to enter private

lands to enforce any law relating to game or fish. Thus, R.C. 1531.14 appears to have rendered R.C. 1531.13 superfluous and nullified the legislative requirement that a wildlife officer have both good cause to believe and an actual belief that a law is being violated before entering private land. While I concur with the majority, I would urge the General Assembly to clarify its intent with respect to these statutes.

_____

Kevin J. Baxter, Erie County Prosecuting Attorney, and Mary Ann Barylski, Assistant Prosecuting Attorney, for appellee.

Climaco, Lefkowitz, Peca, Wilcox & Garofoli, L.P.A., John R. Climaco, and Margaret M. Metzinger, for appellants.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Kimberly A. Olson, Deputy Solicitor, Robert Kenneth James, Assistant Solicitor, and Karla Gebel Perrin, Assistant Attorney General, urging affirmance for amicus curiae, Ohio Attorney General.

_____