**STATE**

v.

**HUDEPOHL.**

2011-Ohio-6917.]

Athens County Municipal Court, Ohio.

No. 11TRC03170.

Decided July 15, 2011.

Lisa A. Eliason, Athens Chief City Prosecutor, for plaintiff.

K. Robert Toy, for defendant.

WILLIAM A. GRIM, Judge.

{¶ 1} This matter came on for consideration of defendant's motion to suppress and the stipulated facts. Defendant was represented by her attorney, K. Robert Toy; the state of Ohio was represented by Lisa A. Eliason, Athens Chief City Prosecutor.

## STIPULATED FACTS

{¶ 2} Defendant was arrested for OVI by Ohio Highway Patrol Trooper Ward on May 15, 2011. She was given an evidential breath test by Trooper Ward on a BAC Datamaster on that date with a result of 0.134g/210L. At the time of that test, Trooper Ward held both a senior operator permit under Ohio Adm.Code 3701–53–09(B) for the BAC Datamaster and an operator-access card for the Intoxilyzer 8000 under Ohio Adm.Code 3701–53–09(D).

## ISSUE

{¶ 3} Ohio Adm.Code 3701–53–09(D) directs:

Individuals holding operator access cards issued under this rule shall use only those evidential breath testing instruments for which they have been issued an operator access card.

Does the above language disqualify officers from operating BAC Datamasters after they have been issued operator-access cards for the Intoxilyzer 8000?

## DISCUSSION

{¶ 4} This appears to be a matter of first impression, with neither party citing any case law directly on point. Defendant submits that as a matter of statutory interpretation, the regulation must be strictly construed against the state and liberally construed in favor of the accused. The state of Ohio submits that the regulation should be interpreted to implement its apparent intention.

{¶ 5} This is not a question of substantial compliance; Trooper Ward's training and accreditation for both the BAC Datamaster and the Intoxilyzer 8000 are stipulated. It is a matter of defining the standard created by the regulation. While it is an administrative regulation in question, the court does find the rules of construction found in R.C. 2901.04 to be helpful.

{¶ 6} Paragraph (A) of the above section reads as follows:

Except as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.

{¶ 7} Paragraph (B) of the above section states:

Rules of Criminal Procedure and sections of the Revised Code providing for criminal procedure shall be construed so as to effect the fair, impartial, speedy, and sure administration of justice.

Thus, there are separate rules of construction for substantive and procedural directives.

{¶ 8} The court finds Ohio Adm.Code 3701–53–09(D) to be a procedural directive, in that it defines neither an offense nor a penalty. *State v. Reedy,* Franklin App. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861. Thus, the court finds R.C. 2901.04(B) to be more instructive. The court will interpret the regulation to effect the fair, impartial, speedy, and sure administration of justice.

{¶ 9} Ohio Adm.Code 3701–53–09(D) must be read in pari materia with Paragraph (B) of that section. As the regulation is structured, Paragraph (D) deals with Intoxilyzer 8000s, and Paragraph (B) deals with the other approved breath-testing instruments, being the Intoxilyzer 5000 series and BAC Datamaster series. The reason for the distinction is that the Intoxilyzer 8000 uses an operator-access card and the others do not. An operator accredited under Paragraph (B) manually enters his permit number.

{¶ 10} Paragraph (B) directs, "Individuals holding permits issued under this rule shall use only those evidential breath testing instruments for which they have been issued a permit." Paragraph (D) directs, "Individuals holding operator access cards issued under this rule shall use only those evidential breath testing instruments for which they have been issued an operator access card." The language in each paragraph is almost identical, substituting "operator's access card" for "permit." The court therefore finds the intent of each paragraph to be the same.

{¶ 11} There are two possible interpretations when construing these paragraphs together. The first option would be to read a disqualification under Paragraph (B) for a BAC Datamaster permit holder to operate an Intoxilyzer 8000 and, under Paragraph (D), a disqualification of an Intoxilyzer 8000 operator-access-card holder to operate a BAC Datamaster. A dual certified operator such as Trooper Ward would be disqualified from operating either instrument. Such a result is absurd and contrary to the fair, impartial, speedy, and sure administration of justice. *State v. Brodie,* 165 Ohio App.3d 668, 2006-Ohio-982, 847 N.E.2d 1268.

4

{¶ 12} The second option is to recognize that the apparent overall purpose of both paragraphs is to ensure that operators are trained and certified on any type of instrument they use. Just as there are particular endorsements necessary for operating separate classes of vehicles (e.g., motorcycles, school buses), each type of instrument requires a separate authorization. If an operator holds permits for the Intoxilyzer 5000 and BAC Datamaster and an operator-access card for the Intoxilyzer 8000, he is qualified to operate each under the respective permit or card for each instrument. Under this interpretation, Paragraphs (B) and (D) complement rather than contradict each other. The court finds this second option to be the correct interpretation of the regulation.

**DECISION**

{¶ 13} The court finds Trooper Ward to be a qualified operator of the BAC Datamaster under Ohio Adm.Code 3701–53–09(B) and also a qualified operator of the Intoxilyzer 8000 under Ohio Adm.Code 3701–53–09(D).

{¶ 14} Defendant's motion to suppress is denied. This matter is set for pretrial hearing on July 26, 2011, at 8:00 a.m.

So ordered.