The STATE of Ohio,

v.

CASTLE.

2012-Ohio-1937.]

Franklin County Municipal Court,
Columbus, Ohio.

No. 2011 TRC 145779.

Decided April 24, 2012.

Richard C. Pfeiffer Jr., Columbus City Attorney, and Orly Ahroni, Assistant City Prosecuting Attorney, for plaintiff.

Cleve Johnson, for defendant.

BRANDT, Judge.

{¶ 1} This matter is before the court for decision on a limited legal question raised as part of defendant's motion to suppress, which was filed on his behalf by his counsel of record. For the reasons set forth herein, defendant's argument is found well taken, and the motion is granted in part.

{¶ 2} On July 3, 2011, defendant, Floyd T. Castle, was arrested and charged with multiple offenses, including operating a motor vehicle while under the influence of alcohol ("OVI") under both R.C. 4511.19(A)(1)(a) and (d). Trooper Rustun K. Schack administered a chemical breath test using the BAC Datamaster. At the time he administered the test, Trooper Schack had been issued both a senior-operator permit to administer breath tests on the BAC Datamaster and an operator-access card to administer breath tests on the Intoxilyzer 8000.

{¶ 3} Defendant filed his motion to suppress on August 12, 2011. The state filed a memorandum contra on September 30, 2011, and a supplemental memorandum contra on February 24, 2012. The limited question before the court at this time is whether the issuance of an operator-access card under Ohio Adm. Code 3701–53–09(D) prohibits the operator from thereafter performing chemical breath tests on any chemical-breath-testing instrument for which the operator has also been issued either an operator or senior-operator permit under Ohio Adm.Code 3701–53–09(B). The parties have filed their briefs and stipulations of fact on the identified legal question, and this matter is decisional.

{¶ 4} Ohio Adm.Code 3701–53–09(D) states:

Individuals desiring to function as operators using instruments listed under paragraph (A)(3) of rule 3701–53–02 of the Administrative Code shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health. The director of health shall issue operator access cards to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701–53–07 of the Administrative Code. Individuals holding operator access cards

issued under this rule shall use only those evidential breath testing instruments for which they have been issued an operator access card.

{¶ 5} Defendant focuses on the last sentence of the regulation to argue that once an individual obtains an operator-access card, that individual is precluded from operating any other breath-testing instrument, including those for which the individual may hold a permit under Ohio Adm.Code 3701–53–09(B). Defendant claims that the language of the regulation is plain and unambiguous and concludes that the court must apply the language and suppress the results obtained from the BAC Datamaster.

{¶ 6} In response, the state contends that the entire regulation must be read to give effect to the legislative intent. By reading all of Ohio Adm.Code 3701–53–09 in pari materia, the state argues that Trooper Schack was authorized to administer chemical breath tests using either the Intoxilyzer 8000 or the BAC Datamaster. The state primarily relies on *State v. Hudepohl*, 166 Ohio Misc.2d 1, 2011-Ohio-6917, 961 N.E.2d 276 (M.C.), in which the court considered the same issue and determined that the defendant's interpretation led to absurd results.

{¶ 7} Administrative regulations are reviewed in the same manner as statutes. *State v. Reedy*, 10th Dist. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, ¶ 10. Legislative intent is the "cornerstone of statutory construction and interpretation." *State v. Jordan*, 89 Ohio St.3d 488, 491–492, 733 N.E.2d 601 (2000), citing *State ex rel. Francis v. Sours*, 143 Ohio St. 120, 124, 53 N.E.2d 1021 (1944). To determine legislative intent, a court must first review the statutory language and determine if it is ambiguous. *Id.* at 492, 733 N.E.2d 601, citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). In reviewing the statute, a court must give effect to the words used and may not delete words used or add words not used. *Id.*, quoting *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979), quoting *Columbus–Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969).

{¶ 8} If the language of a statute is unambiguous, a court must apply it as written; however, if more than one reasonable interpretation of the language exists, then the statute is ambiguous and must be construed by the court. *Id.*, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996); *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.*, 32 Ohio St.3d 24, 27, 512 N.E.2d 332 (1987); *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996). If a statute is found to be ambiguous, a court should consider the factors in R.C. 1.49 to determine legislative intent. *Id.* The doctrine of pari materia may be applied when statutory language is found to be ambiguous. *See State v. Robinson*, 124

Ohio St.3d 76, 2009-Ohio-5937, 919 N.E.2d 190, ¶ 31; *State v. Coburn*, 121 Ohio St.3d 310, 2009-Ohio-834, 903 N.E.2d 1204.

{¶ 9} Trooper Schack had been issued an operator-access card for the Intoxilyzer 8000 on May 5, 2010. The court has reviewed the language of Ohio Adm.Code 3701–53–09(D) and concludes that the regulation means what it says—an individual who has been issued an operator-access card shall not *use* any other type of evidential breath-testing instrument. When a statute (or regulation) is found to be unambiguous, courts may not utilize the doctrine of in pari materia. *See Robinson* at ¶ 31; *Coburn* at ¶ 13. For this reason alone, the chemical-breath-test results should be suppressed.

{¶ 10} However, even if the court would apply the doctrine of in pari materia and construe each subsection of Ohio Adm.Code 3701–53–09 together, the court concludes that it would reach the same result—the language is plain and unambiguous. Ohio Adm.Code 3701–53–09(A) applies to laboratory directors and technicians. Ohio Adm.Code 3701–53–09(B) sets forth the procedure for obtaining an operator permit or a senior operator permit and states:

> Individuals desiring to function as senior operators or operators using instruments listed under paragraphs (A)(1), (A)(2), and (B) of rule 3701–53–02 of the Administrative Code shall apply to the director of health for permits on forms prescribed and provided by the director of health. A separate application shall be filed for each type of evidential breath testing instrument for which the permit is sought.

> The director of health shall issue permits to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701–53–07 of the Administrative Code. Individuals holding permits issued under this rule shall use only those evidential breath testing instruments for which they have been issued a permit.

{¶ 11} Ohio Adm.Code 3701–53–09(B). The language of subsection (B) did not change when the director promulgated subsection (D). The director of health regulated the expiration and renewal of laboratory-director permits, laboratory-technician permits, operator permits, and senior-operator permits in Ohio Adm. Code 3701–53–09(C) and (G). He also regulated how an operator-access card may be retained in Ohio Adm.Code 3701–53–09(E).

{¶ 12} An operator or senior-operator permit must be obtained to use a BAC Datamaster, BAC DataMaster K, and BAC DataMaster cdm, and the Intoxilyzer model 5000 series 66, 68, and 68EN. Ohio Adm.Code 3701–53–02(A)(1) and (2). An individual may apply for multiple permits, but must file a separate application for "each type of evidential breath testing instrument for which the permit is sought." Ohio Adm.Code 3701–53–09(B). The last sentence of that subsection

requires that an individual use only the breath-testing instruments for which the individual holds a permit. Therefore, an individual who has been issued a permit for an Intoxilyzer 5000 series 66 is prohibited from using a BAC Datamaster (unless the individual has also been issued a permit to use the BAC Datamaster). Considering that the regulation was unchanged during the rule-making process to adopt subsection (D), the intent of subsection (B) is clear: multiple permits may be issued to allow the operation of multiple instruments, so long as the individual has a permit for the specific instrument being used. Ohio Adm.Code 3701–53–09(B) was never intended to prohibit an individual who has been issued a permit from using an Intoxilyzer 8000, and its language does not require that result.

{¶ 13} This reading comports with legislative and regulatory intent. The General Assembly has expressed its intent to prohibit operating a motor vehicle while intoxicated, and the director of health was charged with promulgating regulations that protect the rights of both defendants and victims by ensuring reliable chemical-breath-test results. By requiring operators to be approved through the issuance of permits to use certain instruments, the director of health has ensured that only qualified individuals are administering tests, which indicates that the results are reliable (barring any other specific instrument issue).

{¶ 14} In contrast, only one breath-testing instrument, the Intoxilyzer 8000, requires an operator-access card. Ohio Adm.Code 3701–53–02(A)(3). Requiring an operator who has been issued an operator-access card to use *only* the Intoxilyzer 8000 also comports with regulatory intent. The director of health has obviously contemplated allowing individuals to use multiple instruments and, in fact, allows such action when permits are at issue. However, he has made no similar provision regarding operator-access cards and the Intoxilyzer 8000. Ohio Adm.Code 3701–53–09(D) contemplates the issuance of only one operator-access card for an individual to use one specific type of instrument. The regulatory language is unambiguous that an individual holding an operator-access card shall *use* only an Intoxilyzer 8000. The director of health is cognizant of the difference between a permit and an operator-access card. If the director of health intended to allow operators with an operator-access card to use other instruments for which permits had been issued, he could have written the regulation that way; he has done it before in Ohio Adm.Code 3701–53–09(B), but not here.

{¶ 15} The court is aware that it must construe the regulation to give effect to the "fair, impartial, speedy, and sure administration of justice" and not strictly against the state because Ohio Adm.Code 3701–53–09(D) does not define a criminal offense or penalty. *See Reedy*, 2006-Ohio-1212, 2006 WL 648861, at ¶ 11. In this case, defendant was charged with OVI per se, which is a strict-liability offense. *Defiance v. Kretz*, 60 Ohio St.3d 1, 2, 573 N.E.2d 32 (1991), citing *State v. Cleary*, 22 Ohio St.3d 198, 199, 490 N.E.2d 574 (1986).

In determining whether the defendant committed the *per se* offense, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant's chemical test reading was at the prescribed level and that the defendant operated a vehicle within the state. * * * The accuracy of the test results is a critical issue in determining a defendant's guilt or innocence.

*Id.* The director of health has determined that the Intoxilyzer 8000 is reliable. He also determined that the BAC Datamaster and other identified instruments are reliable. Precluding an individual who has been issued an operator-access card from using an instrument that requires a permit (even when the operator has a permit) holds the state to its burden of proof at trial on an OVI per se charge. And yet, this conclusion has no effect on the ultimate goal of ensuring reliable breath-test results—the machines are equally reliable, as determined by the director of health.

{¶ 16} Although he had been issued a senior operator's permit to administer chemical breath tests using a BAC Datamaster, Trooper Schack had also been issued an operator-access card for the Intoxilyzer 8000. Nothing in Ohio Adm.Code 3701–53–07, 3701–53–09, or 3701–53–10 prevents a qualified individual from obtaining a combination of permits or operator-access cards; however, the plain and unambiguous language of Ohio Adm.Code 3701–53–09(D) prohibited Trooper Schack from *using* any evidentiary breath-test instrument other than the Intoxilyzer 8000.

{¶ 17} In summary, Ohio Adm.Code 3701–53–09 is clear and unambiguous. If an individual has an operator or senior-operator permit for a BAC Datamaster, the individual may administer chemical breath tests using a BAC Datamaster. The individual may obtain multiple permits and use any instrument for which the individual has been issued a permit. The individual may obtain an operator-access card. As in this case, the individual may also be issued a permit after being issued an operator-access card. However, once the individual has been issued an operator-access card, the individual is prohibited from *using* any other type of instrument, including those for which the individual may have been issued a permit. Therefore, Trooper Schack was able to obtain his senior-operator permit after he had been issued his operator-access card, but because he had been issued an operator-access card, he was prohibited from *using* the BAC Datamaster.

{¶ 18} The court is cognizant that today's holding might have a negative or undesirable impact for law enforcement. Nonetheless, the court is "constrained by the principles of separation of powers and cannot rewrite" the regulation. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100, *supersed-*

*ed on other grounds by statute.* The remedy must be promulgated by the director of health.

{¶ 19} The motion to suppress is granted in part.

{¶ 20} This decision and entry constitutes a final, appealable order. The clerk is directed to enter the fact of this decision and entry upon the journal of the court.

It is so ordered.